Julian C. LEE, Plaintiff–Appellee,

v.

Jake GREGORY, United States of America, Defendants–Appellants,

and

The Federal Bureau of Investigation, Defendant.

No. 02–57132.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 2004.

Filed April 7, 2004.

Robert D. McCallum, Jr., Assistant Attorney General, Washington, DC, Carol C. Lam, United States Attorney, San Diego, CA, and Barbara L. Herwig and Jeffrica Jenkins Lee, United States Department of Justice Civil Division, Washington, DC, for the defendant/appellant.

Eugene G. Iredale, San Diego, CA, and Douglas S. Gilliland, San Diego, CA, for the plaintiff/appellee.

Before: NOONAN, THOMAS, and BEA, Circuit Judges.

BEA, Circuit Judge:

In July 1999, Federal Bureau of Investigation ("FBI") Special Agent Jake Gregory ("Gregory") was assigned to assist with a nationwide search for federal fugitive Robert Q. Lee ("Robert") by finding and interviewing Robert's brother Julian Christopher Lee ("Julian"). When Gregory located Julian in April 2000, Julian angrily declined to speak with him. Gregory then obtained a copy of an outstanding Florida arrest warrant for "Christopher Lee," Julian's middle name and one of Robert's aliases, known as such to the FBI. Gregory passed the warrant to the San Diego Sheriff's Office, which arrested Julian, and released him on bail four days later. Julian filed this action against Gregory, the FBI, and the United States of America, alleging his arrest gave rise to a *Bivens* cause of action [1] against Gregory, and to several causes of action against the other defendants. Gregory moved for summary judgment, contending that he was entitled to qualified immunity. The district court denied Gregory's motion. We affirm.

## I. JURISDICTION AND STANDARD OF REVIEW

■ Although a denial of summary judgment is not ordinarily appealable, we have jurisdiction over Gregory's interlocutory appeal because the ground for the motion is qualified immunity. *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 942 (9th Cir.2003). We review the district court's denial of summary judgment de novo. *Id.* at 945. Our review is limited to issues of law. *Id.* at 942.

■ The district court's determination that the parties' evidence presents genuine issues of material fact is not reviewable on an interlocutory appeal. *Mendocino Environmental Ctr. v. Mendocino County*, 192 F.3d 1283, 1291 (9th Cir.1999). Thus, we limit our review to the question whether, assuming all conflicts in the evidence are resolved in Julian's favor, Gregory would be entitled to qualified immunity as a matter of law. *Id.; see also, Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir.2001) ("Where disputed facts exist, however, we can determine whether the denial of qualified immunity was appropriate by assuming that the version of the material facts asserted by the non-moving party is correct.").

1. *Bivens v. Six Unknown Named Agents of Federal Narcotics Bureau*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) held that an unconstitutional search and seizure in violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action for damages.

## II. BACKGROUND

The following facts are taken from the record and the district court's order denying summary judgment. Julian's brother Robert had been a fugitive since 1994. The Gloucester County, New Jersey prosecutor's office sought to prosecute him on state robbery and assault charges, but Robert fled. In 1997, the U.S. District Court for the District of New Jersey issued a warrant for Robert's arrest for unlawful flight to avoid prosecution. In the course of the FBI's search for Robert, the Philadelphia FBI office asked the Sacramento FBI office to assist by locating and interviewing Robert's brother Julian.

The Sacramento office found addresses for Julian in the San Diego area and asked the San Diego FBI office for local assistance. In July 1999, Gregory was assigned to find and interview Julian. Gregory inherited the file from another San Diego agent who had interviewed several of Julian's friends.

When Gregory took over the case, the FBI file contained the following information about Julian: he had a California driver's license; he was six feet three inches tall and weighed 270 pounds; he had several California addresses dating back to 1995; in 1997 he had moved to Alaska to work in the commercial fishing industry; and, he occasionally used his middle name, Christopher. The FBI file contained the following information about Robert: he used multiple names, social security numbers, and birthdays; in a 1992 mugshot he was described as six feet tall and weighing 160 pounds; in a 1994 mugshot he was described as six feet tall and weighing 180 pounds; as of February 1997, prosecutors believed that he was living in Alabama under the name Christopher Lee and using Julian's birthday and social security number. Gregory admitted at deposition that all of this information was contained in the file that he received and reviewed in

1999. The file also contained information about an outstanding arrest warrant for aggravated battery and burglary with assault or battery from Dade County, Florida, issued for Christopher Lee.

In April 2000, continuing his efforts to locate Julian, Gregory interviewed J.B., a friend of Julian. During the interview, Gregory showed J.B. a photograph of Robert. J.B. stated that Julian was not the man in the photograph. On April 21, 2000, Gregory went to Julian's house and left his business card. Julian called Gregory that afternoon and asked whether the law required him to speak with Gregory. Gregory replied that it did not, whereupon Julian angrily told Gregory to stop harassing him, cursed at Gregory, and hung up the phone.

Gregory immediately called the Dade County Sheriff's Department and asked them to fax him a copy of the warrant for Christopher Lee. The warrant, which was issued on December 4, 1998, sought "Christopher Lee" on battery and burglary charges. It described Christopher Lee as a black male, six feet one inch tall and 200 pounds and gave a Florida address and driver's license number. The date of birth and social security number on the warrant were the same as Julian's.

On April 21, 2000, Gregory passed the warrant to the duty sergeant at the San Diego Sheriff's Office ("SDSO") and asked whether the SDSO would be interested in executing the warrant. He told the SDSO that he had located the man named in the warrant. Gregory noticed the discrepancy between the physical description in the warrant (six feet one inch, 200 pounds) and Julian's California DMV record (six feet three inches, 270 pounds). The parties dispute whether Gregory informed the SDSO of the discrepancy; Gregory admitted that he could not recall ever seeing a discrepancy between a warrant's descrip-

tion and actual appearance greater than thirty to forty pounds. The parties also dispute whether Gregory told the SDSO that Robert had appropriated Julian's identity (middle name, social security number, and birthday); both arresting officers testified that Gregory did not.

On May 4, 2000, the SDSO arrested Julian. One of the arresting officers telephoned Gregory to let him know of Julian's arrest. Gregory went to the SDSO to interview Julian. During the interview, Julian told Gregory that he had never been to Florida, he was not the man named in the warrant, and he had not spoken to his brother in years. Gregory told Julian that if he cooperated by providing information about Robert it might help with his Florida case. At the conclusion of the interview, Gregory told Julian to have a nice trip to Florida.

The SDSO held Julian for four days before he posted bail. During that time, Florida authorities began extradition proceedings, and Julian was charged under a California statute with being a fugitive. About two weeks after Julian's release, his lawyer telephoned Gregory. The lawyer told Gregory that he believed the warrant did not apply to Julian. Gregory contacted officials in Florida and sent them information about and photographs of Robert. The Florida officials compared Robert's mugshot with the Florida driver's license photo of "Christopher Lee." The photos matched and the Florida officials informed Gregory that the warrant was for Robert Lee using the alias "Christopher Lee" and therefore not for Julian. When Gregory relayed this to the San Diego District Attorney's office, all charges against Julian were dropped.

In April 2001, Julian filed his civil action against Gregory, the FBI, and the United States. After the district court granted in part and denied in part defendants' motion to dismiss, Julian's surviving complaint alleged one *Bivens* cause of action against Gregory and several other causes of action against the other defendants. Julian's complaint alleges that Gregory violated his Fourth Amendment rights by arresting him without probable cause. He alleges that Gregory knew that Julian was not the man sought by the Florida warrant, but arrested him anyway in order to obtain information about Robert.

Gregory moved for summary judgment on qualified immunity grounds. He argued that he did not violate Julian's constitutional rights because he had probable cause to arrest Julian, and that no clearly established law prohibited him from executing a facially valid warrant. The district court found that there were disputed issues of material fact as to what information Gregory gave to the SDSO and, more importantly, as to whether Gregory actually knew that the warrant did not apply to Julian. The district court denied Gregory's motion for summary judgment. Gregory filed a timely notice of appeal.[2]

## III. DISCUSSION

■ Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The qualified immunity inquiry involves two sequential questions. First:"[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Sau-*

---

**2.** The district court's order also denied the United States's motion for summary judgment on several causes of action and granted the motion to strike the portion of the complaint seeking punitive damages from the United States. These rulings were not appealed, and are not presently before this court.

*cier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Second: "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step, is to ask whether the right was clearly established . . . in light of the specific context of the case." *Id.*

### A. Taken In the Light Most Favorable To Plaintiff, The Disputed Facts Show a Constitutional Violation

Gregory first contends that he did not violate Julian's constitutional rights at all because he had probable cause to believe that the person named in the facially valid Florida warrant was in fact Julian and his motive in arresting Julian to pressure him for information about Robert is therefore irrelevant to the Fourth Amendment analysis.

■ Gregory is correct that allegations of ulterior motives cannot invalidate police conduct that is justified by probable cause. *Whren v. United States,* 517 U.S. 806, 811–15, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Thus, if his motive in causing Julian's arrest was to squeeze Julian for information about Robert, *Whren* does render such motive irrelevant. However, Gregory's contention ignores the fact that his conduct must be " 'objectively reasonable' *in light of the facts and circumstances confronting[him],* without regard to [his] underlying intent or motivation." *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (emphasis added). Gregory's actions are not impugned because of his motive, but because of his claimed *knowledge* that Julian was not the person named in the Florida arrest warrant.

■ Julian contends that in light of the facts and circumstances confronting Gregory, Gregory actually knew that the Florida warrant applied not to him, but to Robert. The district court found the evidence presented a genuine issue of material fact as to whether Gregory actually knew that the warrant did not apply to Julian. We may not review that determination. *Mendocino Envtl. Ctr.,* 192 F.3d at 1291. Gregory's contention that his actual knowledge should be ignored is completely without merit.[3]

Knowingly arresting the wrong man pursuant to a facially valid warrant issued for someone else violates rights guaranteed by the Fourth Amendment. *See Brown v. Byer,* 870 F.2d 975 (5th Cir.1989) ("The existence of a facially valid warrant for the arrest of one person does not authorize a police officer to effect the arrest of another person . . . ."). Thus, Julian has presented facts which, if accepted by a reasonable trier of fact, would show that Gregory violated his constitutional right to be free from an unreasonable seizure. The district court did not err in finding that the disputed facts, taken in the light most favorable to Julian, show a constitutional violation.

### B. Clearly Established Law Gives Reasonable Officers Notice That Knowingly Arresting the Wrong Person Violates the Rights Guaranteed by the Fourth Amendment

■ Gregory contends that even if there is an issue of fact as to whether he violated Julian's Fourth Amendment rights, there is no clearly established law that would have provided him with notice that his

---

**3.** Gregory's contention that he did not cause Julian to be arrested because he merely passed the warrant to the SDSO is similarly without merit. Gregory told the SDSO that he had located the individual named in the

warrant and passed on Julian's address. A police officer is "responsible for the natural consequences of his actions." *Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

actions were unlawful. To determine whether a right was "clearly established" we ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151.

Some wrongs are self-evident. "[E]ven if there is no closely analogous case law, a right can be clearly established on the basis of 'common sense.'" *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir.2001) (citation and internal quotation marks omitted). There is no requirement that courts have previously ruled "the very action in question" unlawful. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). No reasonable officer would believe that he is entitled knowingly to arrest the wrong man pursuant to a facially valid warrant the officer knows was issued for someone else. Every officer knows, or should know, that he needs a warrant which correctly identifies the arrestee, or probable cause, to arrest a particular individual.

This court, sitting en banc after *Saucier*, has found a clearly established right against being criminally charged based on deliberately fabricated false evidence even though there were no prior cases expressly recognizing the specific right—"[p]erhaps because the proposition is virtually self-evident." *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir.2001) (en banc). Similarly, this court has stated "no particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control." *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994). Knowingly arresting the wrong person is the same kind of self-evident wrong because an officer cannot have probable cause to believe the person arrested has committed the crime described in a warrant when he knows that the warrant identifies another person.

Even were it not self-evident, knowingly causing the arrest of the wrong person is plainly unlawful in light of past precedent. *See Mendocino Envtl. Ctr.*, 192 F.3d at 1292–95 (where district court found a factual dispute over the source and veracity of statements on which officers allegedly relied for probable cause to arrest plaintiffs, officers were not entitled to qualified immunity). Although the facts in *Mendocino Environmental Center* are different from the facts in issue here, "[a]n officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury." *Mendoza*, 27 F.3d at 1362.

## IV. CONCLUSION

Of course, we do not determine whether Gregory knew or did not know he was causing the arrest of the wrong man when he turned the SDSO on to Julian. That is an issue reserved to the trier of fact at trial, if a trial takes place. We merely hold that the district court did not err in finding that the disputed facts, viewed in the light most favorable to Julian, create a triable issue of fact: whether Gregory knew he was causing the arrest of the wrong man. If established, such wrongful arrest would be sufficient to constitute a constitutional violation. We further hold that clearly established law provides notice to a reasonable officer that arresting a man pursuant to a facially valid warrant that the officer knows does not apply to the man arrested is unlawful. The district court correctly denied Gregory's motion for summary judgment made on qualified immunity grounds. The order of the district court is AFFIRMED.