Markus E. TATUM, Petitioner—Appellee,

v.

D.W. WINSLOW, Health Care Manager, Respondent—Appellant.

No. 04–15557.
D.C. No. CV–00–03465–VRW.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 2004.

Decided Jan. 19, 2005.

Sarah King, Lisa A. Turbis, Howard Rice Nemerovski Canady Falk, San Francisco, CA, for Petitioner–Appellee.

Sara Turner, Office of the California Attorney General, San Francisco, CA, for Respondents and Respondent–Appellant.

Before D.W. NELSON, KLEINFELD, and GOULD, Circuit Judges.

## MEMORANDUM *

Dwight W. Winslow appeals from the district court's denial of his motion for summary judgment based on a defense of qualified immunity. Winslow, as the Health Care Manager of Pelican Bay State Prison, supervised the medical care system of Pelican Bay. Markus Tatum, a California state prisoner, alleges that Winslow was deliberately indifferent to his serious medical needs in denying and delaying his treatment for Hepatititis C ("HCV"). Tatum filed suit under 42 U.S.C. § 1983, after having exhausted all of his administrative remedies. Winslow moved for summary judgment, and the district court denied the motion as to Winslow, but granted the motion as to the other named defendants. Claiming the intervention of new controlling law, citing *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), Winslow renewed his motion for summary judgment on grounds of qualified immunity. The district court once again denied his motion.

We limit our review to the question whether, "assuming all conflicts in the evidence are resolved in [Tatum's] favor, [Winslow] would be entitled to qualified immunity as a matter of law." *Lee v. Gregory*, 363 F.3d 931, 932 (9th Cir.2004). *See also Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir.2001) ("Where disputed facts exist, however, we can determine whether the denial of qualified immunity was appropriate by assuming that the version of the material facts asserted by the nonmoving party is correct."). Because we answer this question negatively, we affirm the district court's denial of summary judgment.

In *Saucier*, the Supreme Court clarified the analysis of qualified immunity as a defense from suit. *Saucier*, 533 U.S. at 201. If a defendant claims qualified immunity, the court must make two distinct inquiries, the "constitutional inquiry" and

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

the "qualified immunity inquiry." *See Estate of Ford v. Ramirez–Palmer,* 301 F.3d 1043, 1049 (9th Cir.2002). The "constitutional inquiry" asks whether "the facts alleged show the officer's conduct violated a constitutional right" when "[t]aken in the light most favorable to the party asserting the injury." *Saucier,* 533 U.S. at 201. If this question is satisfied, then the court turns to the "qualified immunity inquiry," and asks if the right was clearly established. *Id.* at 201–2. While *Saucier* considered qualified immunity in the context of the Fourth Amendment, its analysis also applies in the Eighth Amendment context. *Estate of Ford,* 301 F.3d at 1050. After considering each component of the *Saucier* analysis, we conclude that the district court did not err in finding that the disputed facts, viewed in the light most favorable to Tatum, create a triable issue of fact; namely, whether Winslow was deliberately indifferent to Tatum's serious medical needs in denying and delaying his treatment for Hepatititis C. *See Lee,* 363 F.3d at 936.

### *The "Constitutional Inquiry"*

■ A prisoner can establish deliberate indifference by showing that delaying treatment was "medically unacceptable." *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir.1996). While Winslow approved the liver biopsy in January 2001, Tatum's treatment was delayed for over a year, although the last half of that period of delay is not directly attributable to Winslow because Tatum was transferred from Pelican Bay in August 2001. This circuit's case law suggests that such a delay establishes a constitutional violation. *See Broughton v. Cutter Labs.,* 622 F.2d 458, 459–60 (9th Cir.1980) (per curiam) (acknowledging the possibility that a delay of only six days in treating hepatitis could be enough to support a claim of deliberate indifference to a prisoner's medical needs);

*see also Hunt v. Dental Dep't,* 865 F.2d 198, 201 (9th Cir.1989) (finding a three-month delay of treatment to be deliberately indifferent in light of prisoner's serious dental problems and repeated complaints). Whether the assertedly long liver biopsy waiting list made it necessary for Winslow to violate the terms of the *Madrid* guidelines, which mandated a biopsy within six weeks of request, is a triable issue of fact. *See Madrid v. Gomez,* 889 F.Supp. 1146, 1200–27 (N.D.Cal.1995). And assuming that Tatum's version of the facts is correct, Winslow violated established law by failing to ensure Tatum received a liver biopsy in a timely manner as mandated by the *Madrid* guidelines.

Whether Winslow's proxy, Dr. Thor, was solely responsible for Tatum's second-level appeal in Winslow's absence is another triable issue of fact in dispute. The review document, by its own terms, was executed on Winslow's behalf, using Winslow's signature block, and, as the district court found, "[i]t is also not unreasonable to infer that Winslow would have reviewed the actions taken on his behalf upon his return, even if the official documents were signed by others." Accepting, as we must for purposes of this appeal, Tatum's version of the facts, Winslow had knowledge of Tatum's serious medical needs around the time of his denial of Tatum's second-level appeal, dated April 8, 1999. Winslow's refusal to take any steps to meet those needs until almost two years later was medically unacceptable and constitutes deliberate indifference to Tatum's serious medical condition.

There are also genuine issues of material fact relating to the question of whether Tatum met the criteria for treatment. The issue of whether the Alpha–Interferon eligibility criteria extend in any way to considerations of liver biopsies is a genuine material factual issue in dispute. There is

also a genuine issue of material fact as to whether or not a treating physician must file a utilization review/utilization management ("UR/UM") form before a liver biopsy may be performed. Prison nurse Donna Alpaugh's testimony suggests that UR/UM forms, as mere requests, may be superseded by a physician's orders. Moreover, as the district court found, the conflicting accounts of when and whether Tatum was psychiatrically approved for treatment, or even needed such approval, presented a triable issue of fact as to "whether [Tatum] received psychiatric clearance such that the exclusion criterion would not have been an issue." There is also a factual dispute as to the nature of Tatum's compliance with other treatment regimens, a possible ground for exclusion from Alpha–Interferon treatment. Assuming all conflicts in the evidence are resolved in Tatum's favor, Tatum was eligible for treatment, his doctors properly ordered treatment, and Winslow knowingly deprived him of that treatment, "despite his knowledge of a substantial risk of serious harm." *Wallis v. Baldwin,* 70 F.3d 1074, 1077 (9th Cir.1995) (quoting *Farmer v. Brennan,* 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Winslow therefore fails the first prong of the *Saucier* test.

### The "Qualified Immunity Inquiry"

█ The second step of the *Saucier* analysis requires that the defendant demonstrate that his misconduct was not a violation of clearly established law. *Saucier,* 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *id.* at 202, or "whether the state of the law [at the time of the challenged action] gave 'fair warning' to the officials that their conduct was unconstitu-

tional." *Clement v. Gomez,* 298 F.3d 898, 906 (9th Cir.2002) (quoting *Hope v. Pelzer,* 536 U.S. 730, 740, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). This court's case law clearly establishes that to deny or delay access to medical care constitutes an Eighth Amendment violation. *See id.* ("Furthermore, it was also clearly established that the officers could not intentionally deny or delay access to medical care.").

Winslow suggests that because the *Madrid* court approved of the HCV policy at Pelican Bay and he followed those guidelines faithfully, he had no reason to believe that his actions violated clearly established law. But Tatum does not question the constitutionality of the guidelines, only the fact that Winslow properly adhered to them. Precisely because the guidelines received the blessings of the *Madrid* court, Winslow had every reason to believe that violating them constituted a violation of clearly established law. Because Winslow's argument as to the "qualified immunity inquiry" is parasitic on his argument as to the "constitutional inquiry," his defense here likewise implicates the same genuine issues of material fact, only once removed. Resolving those factual disputes in favor of Tatum, we find that Winslow also fails to pass the second prong of the *Saucier* test.

Having thus failed to establish his entitlement to qualified immunity, Winslow's appeal of summary judgment must fail. The judgment of the district court is therefore AFFIRMED.