BEA, Circuit Judge,
concurring in part and dissenting in part:
I agree with almost all of the majority opinion. For the officers here to have conducted these searches without any plan by which to control the dogs other than to shoot them is outrageous, especially given that they knew about the dogs well in advance. Clearly, a reasonable officer would have understood that his actions violated an established right of the plaintiffs. I must dissent, however, from part III.A of the majority’s opinion. I would reverse the district court’s order denying Deputy Sheriff Linderman qualified immunity.
Judge Ball issued several search warrants on January 20, 1998. The issue here is whether the evidence, taken in the light most favorable to the plaintiffs, establishes that Officer Linderman’s instructions to seize “all” evidence covered by the search warrant violated an established constitutional right of the plaintiffs, and whether it would be clear to a reasonable officer that *979 his conduct was unlawful in the situation Linderman confronted. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Lee v. Gregory, 363 F.3d 931, 934-36 (9th Cir.2004).
Here, the precise language of the warrants is important. The warrants commanded (not authorized) the officers to seize a very broad range of evidence in search of several crimes:
YOU ARE THEREFORE COMMANDED, in the daytime, to make search of premises ... for the following property:
1) A video tape or copy thereof depicting scenes and images from the Pink Poodle night club on or about August 24, 1997 in all of the described premises;
2) Any evidence of membership in, affiliation with, activity of, or identity of, any gang, including but not limited to, any reference to “Hells Angels,” “HA”, “Red & White,” “81”, “Big Red Machine”, “HAMC”, including, but not limited to, “West Coast OM notes,” “East Coast OM notes”, “BHC newsletter”, including, but not limited to drawings, paintings, photographs, photograph albums, videotapes, writings, furniture, furnishings, fixtures, and objects known, or which may appear by content, to depict or contain mention of membership in, affiliation with, activity of, or identity of, any gang, including, but not limited to, the following: names, initials, and monikers of known, or which may appear by signs, and expressions known, or which may appear by content, to identify a gang or any of its members or affiliates; and identifying numbers, colors, and expressions of a geographic region with which a gang is known, or which may appear by content, to associate;
3)Notes or records of the Hells Angel meeting at the Hells Angel Clubhouse, ... on Friday, August 29, 1997 and July through November 1996;
,And if you find the same or any part thereof, to hold such property in your possession under California Penal Code Section 1536, or to release the property to the appropriate agency for state or federal forfeiture proceedings.
The district court denied Linderman’s motion for summary judgment based on qualified immunity, reasoning that because the word “any” could be read to mean “one, some or all,” Linderman had a duty to take only a representative sampling. The word “any” can mean “all” just as easily as it can mean “some.” Webster’s defines the word “any” as:
1: one or some indiscriminately of whatever kind: a: one or another taken at random any man you meet> b: EVERY — used to indicate one selected without restriction any child would know that>;
2: one, some, or all indiscriminately of whatever quantity: a: one or more— used to indicate an undetermined number or amount chave you any money> b: ALL — used to indicate a maximum or whole any help he can get> c: a or some without reference to quantity or extent < grateful for any favor at all>; 3a: unmeasured or unlimited in amount, number, or extent any quantity you desire> b: appreciably large or extended < could not endure it any length of time>.
Webstee’s New World College Dictionary (4th ed.2002) (bold emphasis added). Given that Linderman was commanded to seize any evidence meeting the broad de *980 scription in the warrant, he was not unreasonable in construing the warrant literally, and certainly it is not clear that a reasonable officer would have known that Linder-man’s conduct was unlawful in the situation he confronted. The officers were searching for evidence of a murder, possibly gang related. This was not a traffic offense they were investigating.[1] There was also a strong suspicion that other members of the Hells Angels might have been involved in covering up evidence of the crime.
Plaintiffs do not claim that Linderman told the other officers to seize property that fell outside the scope of the warrant. The refrigerator door, the mailbox, the motorcycles, and especially the portion of the sidewalk in front of the clubhouse in which members of the Hells Angels had written their names in the concrete while it was still wet, all contained indicia of the club’s existence and the composition of its membership, essential evidence to prove the gang enhancement under California Penal Code section 186.22. Neither is there any evidence that Linderman knew exactly which gang indicia would establish that Tausan was a member of the Hells Angels gang, and had committed the murder pursuant to gang activities. Tausan could well have had a nickname or used a symbol to identify himself.
The district court found that because a representative sampling of gang indicia evidence would have sufficed to prove the existence of the Hells Angels, Linderman’s instructions to seize “all” of the evidence were unreasonable. The district court, and the majority opinion, rule that Linder-man was required to exercise discretion in deciding how much evidence was enough. The law does not impose such a burden on police officers.
In support of the proposition that police officers have a duty to seize only a sampling of indicia evidence, the majority opinion cites Liston v. County of Riverside, 120 F.3d 965, 979 (9th Cir.1997) and United States v. Apker, 705 F.2d 293, 302 (8th Cir.), abrogated on other grounds, United States v. Fitzgerald, 724 F.2d 633 (8th Cir.1983). Both cases are inapposite here.
In Liston, the police were sued for destruction of property and unreasonably detaining the homeowners when they executed a search warrant for a previous owner, James Rocky Hill, upon the new owners of a home, the Listons. The district court denied the officers’ motion for summary judgment based on qualified immunity. This court affirmed in relevant part, holding there were material issues of fact for a jury as to whether it would be clear to a reasonable officer that the conduct of the officers who conducted the search for Hill’s effects was unlawful, when the search was effected on the Listons, not Hill, the suspect named in the warrant.
The evidence produced by plaintiffs included evidence that the police had broken through their front door with a battering ram, thrown Mr. Liston to the floor injuring him, pointed a gun at Mr. Liston’s face even though he was not resisting the police, and held the entire family for several minutes while the police went through the *981 house “trashing” it. Id. at 970-71. The Listons offered undisputed claims that the officers destroyed the front door, broke down the fences surrounding the backyard, dug holes in the backyard and left garbage and the Liston’s personal property throughout the house. Id. at 972.
The Listons also produced evidence that the police did all this after the Listons informed the police that they had just purchased the house from Hill, the subject of the warrant; the police saw a “For Sale” sign in the yard which said the house had “Sold”; and, the police found the escrow papers for the sale from Hill to the Listons and Mr. Liston’s driver’s license. Id. Mrs. Liston testified that the police knew they were in the wrong house and were making jokes about it shortly after they entered the house. Id. at 972. In light of the evidence that the police were acting outside the scope of the warrant, this court held that such evidence raised a fact question as to whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted and precluded summary judgment based on qualified immunity. Id.
As the court recognized in Liston, it was not clear the destruction of property by itself violated a constitutional right. “[0]f-ficers executing a search warrant occasionally ‘must damage property in order to perform their duty.’ ” Id. at 979 (quoting Dalia v. United States, 441 U.S. 238, 258, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979)). “Until the officers learned that they were in the wrong house, the officers could have reasonably believed, under these precedents, that the way they conducted the search was lawful. As a result, they would be entitled to qualified immunity. But once they knew the house belonged to the Listons, their search was no longer justified.” Id.[2]
There is no claim that Linderman executed the search warrants at the wrong location or upon the wrong people, nor that the officers destroyed any property that did not fall within the scope of the warrant.
Apker also involved a question different from the one presented here. Apker, did not hold that officers have a duty to take only a representative sample of evidence described in an indicia warrant. In Apker, the appellants challenged the indicia warrants as violating the requirement under the Fourth Amendment that the things to be seized be described with particularity. The court in Apker ruled that the indicia warrants did not meet the Fourth Amendment’s particularity requirement and consequently the seizure was unlawful. 705 F.2d at 297-98.
The plaintiffs here also challenged the warrants. The district court found that the affidavit supporting the search warrants was insufficient to establish probable cause to search for the videotape or meeting notes. However, the court found that the warrants were supported by probable cause for the purpose of seeking gang indicia evidence. Plaintiffs did not appeal this ruling. It is not clear whether the plaintiffs also challenged the warrants as not satisfying the particularity requirement of the Fourth Amendment, but that challenge is not raised here. Although I *982 might well have agreed that this warrant was overly-broad on its face, that issue is not before us.
While it is true the police do not have discretion to go outside the bounds of the warrant, neither do they violate a plaintiffs’ constitutional rights when they seize evidence pursuant to a valid search warrant. That is what warrants are for — to limit the evidence that can be seized and the areas to be searched. It is not the police officer’s role to determine how to limit the scope of the warrant. It is the function of the independent magistrate to assure that there is probable cause to issue the warrant and that the warrant is drafted narrowly and the things to be seized are described with particularity.
Finally, there are good reasons for not requiring officers to exercise their own discretion as to how much evidence is enough. Linderman was not the deputy district attorney who would try the case and was not in a position to judge whether the trial court would admit into evidence photographs of the objects instead of the objects themselves or whether, in this era of digitally altered images, defense counsel would ridicule a photograph as tainted by police technicians, should the original object not be produced. At the time of the search, Linderman did not know what evidence would be found, how that evidence might or might not prove Tausan was a member of the Hells Angels, nor exactly what needle the district attorney might find in that haystack. Often it is only by searching through a large volume of evidence that an attorney is able to find the few crucial pieces of evidence that establish the case. It was not Linderman’s role during the simultaneous search of several residences to pre-judge what would or would not turn out to be important.[3]
Because the police were looking for evidence of a murder, and a possible gang enhancement charge, and, most importantly, because the police did not seize any evidence that was outside the scope of the warrant, I fail to see how a torn-up sidewalk, spoiled food in the refrigerator, and the loss of a mailbox rise to the level of a constitutional violation. Accordingly, I dissent from the denial of qualified immunity to Linderman.

. The majority opinion minimizes the importance of the searches by stating: "The property here in dispute was not evidence of a crime; rather, the justification for seizing the indicia evidence was to support a sentencing enhancement against Steve Tausan.” Majority Op. at 972. The majority opinion is mistaken. The warrants read that the police were to look for "evidence of the commission of felonies, to wit: violations of (California Penal Code Section 187 (murder), Penal Code Section 211 (robbery)), and (evidence of active participation in the felonious conduct of a criminal street gang as defined in Penal Code § 186.22).” (capitalization altered).

. The hypothetical posed by the district court that it would have been unreasonable for an officer to cut a column off a house because it had the owners' initials on it is also inappo-site. It would have clearly resulted in substantial harm to property that was not described in the warrant — the house. Here, the concrete sidewalk had the names of the members of the Hells Angels' club inscribed in it and the plaintiffs do not claim its removal caused any consequential damage. All the evidence seized or damaged fell within the scope of the warrant.

. Neither is it up to Linderman to judge the dramatic effect on a jury of the demonstrative evidence, such as the concrete sidewalk where the Hells Angels' members had signed their name.