MEMORANDUM *
Debbie Morris, a Placer County social worker, appeals the district court’s order denying her motion for summary judgment based on qualified immunity for her decision to take eight-year-old Christian Springer into protective custody without a warrant. The Springers sued Morris under 42 U.S.C. § 1983, alleging that Morris violated the family’s Fourteenth Amendment right to familial association and Christian’s Fourth Amendment right to freedom from unreasonable seizures. The district court originally granted Morris’s motion for summary judgment. On reconsideration, however, the district court struck one of Morris’s statements and denied summary judgment, holding that the remaining undisputed evidence did not establish that Morris had reasonable cause to take Christian into custody.
We have jurisdiction over Morris’s interlocutory appeal because the ground for her motion was qualified immunity. Lee v. Gregory, 363 F.3d 931, 932 (9th Cir.2004). We reverse and grant qualified immunity.
FACTUAL BACKGROUND
The following facts are undisputed. On the afternoon of February 1, 2005, a teacher at Antelope Creek School noticed red marks on eight-year-old Christian Springer’s nose. Christian told the teacher that his father had pinched him on the nose and that it hurt. At approximately 1:45 p.m., someone at the school called Child Protective Services. Shortly thereafter, Morris, an emergency response social worker, arrived at the school. Morris saw the mark on Christian’s nose. Christian told Morris that his adoptive father, John Springer, came into his bedroom and started hitting him, slapped him on his face three times, pinched his nose very hard, and hit him on the butt three times so that it was still sore. Christian also told Morris that his father had slapped him on the face before and that his father drank alcohol and sometimes became drunk. He told Morris that he was afraid to go home because his father might hurt him. When the school day ended at approximately 2:45 p.m., Morris did not allow Christian to board the school bus to go home.
Morris then interviewed Christian’s teacher, Patricia Shier. Shier told Morris that Christian had been threatening to kill himself since he was five years old, that he *589 was aggressive with other children, that he had brought a box-cutter to school, that he was angry and talked about violence, and that Christian had been suspended the previous Friday for punching other children. She also told Morris that Christian had been diagnosed as severely emotionally disturbed and that he had, until recently, been on medication for attention deficit disorder. Finally, Shier told Morris that when she met with Christian’s parents the previous week to discuss Christian’s learning disability, Christian’s father John stated that he was at his “wit’s end” with Christian, while Christian’s mother Cassandra made herself “very small.”
At approximately 2:55 p.m., Morris called the police department. Officer Jerrold Seawell responded. Christian told Seawell that his father, who was in a bad mood from drinking beer, slapped him three times and pinched his nose. Christian claimed that he was afraid to go home because his father would get mad at him for talking to police and would hit him hard. He also told Seawell that his father often hit him when he was mad at him.
Seawell told Morris that he would contact John Springer. At 4:25 p.m., after he interviewed Springer at home, Seawell arrested Springer for cruelty to a minor.
Sometime after 4:00 p.m., after consulting with County Counsel, Morris placed Christian in the Placer County Children’s Receiving Home. Morris later stated that she did not get a warrant to detain Christian because getting a warrant would take “at least a couple of hours.”
DISCUSSION
We review the district court’s denial of summary judgment de novo. Lee, 363 F.3d at 932. Where disputed facts exist, we “determine whether the denial of qualified immunity was appropriate by assuming that the version of the material facts asserted by the non-moving party is correct.” Jeffers v. Gomez, 267 F.3d 895, 903 (9th Cir.2001).
An officer is entitled to qualified immunity if she acted reasonably under the circumstances. KRL v. Estate of Moore, 512 F.3d 1184, 1189 (9th Cir.2008) (citing Wilson v. Layne, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). We follow a two-pronged approach when analyzing qualified immunity. The first inquiry is whether, “[t]aken in the light most favorable to the party asserting the injury ... the facts alleged show the officer’s conduct violated a constitutional right[.]” Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the answer to the first inquiry is yes, the second inquiry is whether the right was clearly established: in other words, “whether it would be clear to a reasonable officer that h[er] conduct was unlawful in the situation [s]he confronted.” Id. at 202, 121 S.Ct. 2151. We may “exercise [our] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.” Pearson v. Callahan, — U.S. -, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). We hold that even if Morris violated the Springers’ constitutional rights, she is entitled to qualified immunity under the second Saucier prong because it would not have been clear to a reasonable social worker in the situation Morris confronted that her conduct was unlawful under clearly established law.
We conduct a two-part analysis when we assess the second Saucier prong: “1) Was the law governing the official’s conduct clearly established? 2) Under that law, could a reasonable official have believed the conduct was lawful?” Rogers v. County of San Joaquin, 487 F.3d 1288, 1296-97 *590 (9th Cir.2007) (quoting Ram v. Rubin, 118 F.3d 1306, 1310 (9th Cir.1997)) (internal quotation marks and citation omitted). A right is clearly established if “the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Id. at 1297 (quoting Saucier, 533 U.S. at 202, 121 S.Ct. 2151) (internal edits omitted). “If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.” Saucier, 533 U.S. at 202, 121 S.Ct. 2151.
The law was clearly established by February 2005 that government officials could not take a child into temporary custody without a warrant absent evidence establishing “reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury.” Mabe v. San Bernardino County, 237 F.3d 1101, 1106 (9th Cir.2001) (quoting Wallis v. Spencer, 202 F.3d 1126, 1138 (9th Cir.2000)) (internal quotation marks omitted); see also Ram, 118 F.3d at 1310. By February 2005, we had applied this principle to find that social workers lacked reasonable cause to take children into custody without a warrant where there was no danger that abuse would occur in the time it would take to obtain a warrant or where there was a significant delay between the investigation and the removal. See Mabe, 237 F.3d at 1108-09 (reversing grant of qualified immunity where the social worker waited four days before removing the child, the abuse had not recurred since a police report a month prior, and a warrant could be obtained before any further abuse was likely to occur); Wallis, 202 F.3d at 1138 (reversing a grant of summary judgment for the city where the removal was based on “a story of anticipated ritual murder ... that would appear to an objective observer clearly to be founded in mental illness.”); Ram, 118 F.3d at 1311 (reversing grant of qualified immunity where the social worker took the children into custody despite two investigations that failed to confirm abuse and against the advice of subordinates who were more familiar with the case).
At the time Morris acted, however, our cases would not have put Morris on notice that her conduct under the circumstances presented in this case was unlawful. Morris directly observed the red marks on Christian’s nose, and Christian told Morris that his father, hit him, slapped him, pinched his nose hard, and spanked him; that his father sometimes became angry when he was drunk; and that he was afraid to go home because his father might hurt him. Faced with these facts and a very short window of time in which to make a decision, Morris could reasonably believe that Christian was in danger of serious bodily injury and that it was lawful for her to prevent him from returning home on the bus.[1] Morris’s later decision to take Christian to the Placer County Children’s Receiving Home was further reinforced by her discussions with Christian’s teacher and with Officer Seawell. Thus, even if Morris’s conduct violated the Springers’ constitutional rights, nonetheless she made a reasonable decision when *591 faced with a difficult choice. Because it was reasonable for Morris to believe in the circumstances presented in this case that her decision to take Christian into protective custody without a warrant was lawful, she is entitled to qualified immunity.
REVERSED and REMANDED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. The Springers also argue that a social worker must call the parents before taking a child into protective custody. We have held that although officers cannot seize children expected of being abused unless they first pursue reasonable avenues of investigation, "[wjhether a reasonable avenue of investigation exists ... depends in part upon the time element and the nature of the allegations.” Wallis, 202 F.3d at 1138. A rule requiring a call in all cases would be inconsistent with Wallis 's requirement that an investigation be reasonable under the circumstances.