UNITED STATES of America,
Petitioner–Appellant,

v.

Peter M. PARROTT, Respondent–
Appellee.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Peter M. PARROTT, Defendant–
Appellant.

Nos. 92–55305, 92–55410.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 19, 1992 *.

Submission Deferred Aug. 20, 1992.

Resubmitted Jan. 12, 1993.

Decided April 27, 1993.

---

* This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Peter M. Parrott, in pro per.

James R. Asperger, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: TANG and HALL, Circuit Judges, and WALKER, District Judge.**

WALKER, District Judge:

Following sentencing upon a guilty plea to charges of securities fraud and mail fraud, Parrott filed a motion under 28 U.S.C. § 2255 challenging the terms of his sentence. The district court reduced the amount of restitution and left all other terms of Parrott's sentence unchanged. In 92–55305, the United States appeals the reduction in the amount of restitution and in 92–55410, Parrott appeals the denial of his motion with respect to other terms of his sentence.

## I.

In 1989, Parrott pled guilty to two counts of a seventeen count indictment. The indictment alleged that, from 1985 to 1987, Parrott abused his position as a stockbroker for E.F. Hutton to liquidate a total of approximately $350,000 from an account belonging to Drayer, who was related to Parrott through marriage. Counts 1 through 10 alleged separate purchases or sales of securities in violation of 15 U.S.C. §§ 78j(b), 78ff. Counts 11 through 17 alleged separate acts of mail fraud used by Parrott to conceal the liquidation of Drayer's account, in violation of 18 U.S.C. § 1341.

Count one of the indictment, to which Parrott pled guilty, alleged that Parrott illegally sold $103,400 worth of securities from Drayer's account in May 1985. Count eleven, to which Parrott also pled guilty, alleged a related act of mail fraud. In exchange for Parrott's plea, the government moved for the dismissal of the remaining 15 counts. The district court sentenced Parrott to four years imprisonment on the securities fraud count and five years of probation on the mail fraud count. As terms of probation, the district court ordered restitution paid to E.F. Hutton in the amount of $350,000, psychiatric counseling, and notification of all employers of this conviction. The court concluded that the "sentence imposed on Count eleven shall be consecutive to the sentence imposed on Count I, * * * and shall be consecutive to

any other sentence the defendant is presently serving." At the time of sentencing, Parrott was serving a sentence in California state prison for burglary. On the government's motion, the district court dismissed the remaining fifteen counts of the indictment.

On January 31, 1992, in response to Parrott's § 2255 motion, the court reduced the amount of restitution from $350,000 to $103,-400, and left unchanged the remaining terms of Parrott's sentence.

## II.

The United States appeals the reduction in restitution. Parrott challenges (1) the length of his prison sentence; (2) the determination that this sentence should run consecutively to Parrott's state sentence; and (3) the terms of probation requiring notice to employers and psychiatric counseling.

### A. *Restitution.*

■ We review a restitution order for abuse of discretion as long as it is within the statutory framework. Questions of law are reviewed de novo. *United States v. Sharp,* 941 F.2d 811, 814 (9th Cir.1991).

For crimes committed between 1983 and 1987, a district court may order restitution under two different statutes. *United States v. Soderling,* 970 F.2d 529, 532 (9th Cir.1992). A restitution order is valid if it is valid under either statute. *United States v. Weir,* 861 F.2d 542, 546 (9th Cir.1988) *cert. denied,* 489 U.S. 1089, 109 S.Ct. 1555, 103 L.Ed.2d 858 (1989). The first, the Federal Probation Act ("FPA"), provides that the court may order, as a condition of probation, that the defendant "be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had." 18 U.S.C. § 3651, repealed by Pub.L. No. 98–473, tit. II, § 212(a)(2), 98 Stat. 1987, 2031 (1984). The FPA is applicable to offenses committed before November 1, 1987. *Id.* The second statute, the Victim and Witness Protection

** Honorable Vaughn R. Walker, United States District Judge for the Northern District of California, sitting by designation.

Act ("VWPA"), 18 U.S.C. §§ 3663, 3664, provides that "a defendant convicted of an offense" may be required to "make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1). The VWPA applies only to violations of Title 18 and certain subsections of 49 U.S.C.App. § 1472. *United States v. Snider,* 957 F.2d 703, 706 (9th Cir.1992). This statute became effective January 1, 1983 and is still in effect.

The government contends that the district court erred in reducing the amount of restitution required of Parrott from $350,000 to $103,400. According to the government, the original $350,000 restitution order is appropriate under either the FPA or the VWPA.

Under either statute, three independent methods are employed to determine the appropriate amount of restitution. Of course, the defendant and the government may negotiate a plea agreement wherein the defendant stipulates to the amount of restitution. We have consistently interpreted the FPA to permit a sentencing court to award any amount of restitution, even an amount greater than the amount of losses alleged in the indictment, pursuant to a fully negotiated plea agreement. *United States v. Duvall,* 926 F.2d 875, 877 (9th Cir.1991); *United States v. Koenig,* 813 F.2d 1044, 1046 (9th Cir.1987); *Phillips v. United States,* 679 F.2d 192, 194 (9th Cir.1982). Recently, we reached the same result in a case governed by the VWPA. *Soderling,* 970 F.2d at 533.

Second, in the absence of a plea agreement or in those cases where the plea agreement is silent on the amount of restitution, the FPA authorizes an order of restitution in an amount up to the amount of "actual damages." 18 U.S.C. § 3651. The "actual damages" must be established by some type of "judicial determination." *United States v. Gering,* 716 F.2d 615, 625 (9th Cir.1983). Such judicial determination may be made at trial. *Gering,* 716 F.2d at 625. A judicial determination might also be made after a separate hearing for the purpose of fixing the amount of restitution. *United States v. Jenkins,* 884 F.2d 433, 440 (9th Cir.1989), *cert. denied,* 493 U.S. 1005, 110 S.Ct. 568, 107 L.Ed.2d 562 (1989). Before the amount of restitution can be determined, however, the defendant must be afforded notice. *United States v. Schiek,* 806 F.2d 943, 944 (9th Cir. 1986), *cert. denied,* 481 U.S. 1032, 107 S.Ct. 1962, 95 L.Ed.2d 534 (1987).

The VWPA contains similar statutory requirements. The amount of restitution must be fixed by judicial determination, by a preponderance of the evidence. The defendant must be afforded notice and an opportunity to be heard. *Weir,* 861 F.2d at 546.

Lastly, in cases where there is neither a plea agreement which addresses the amount of restitution to be paid nor a judicial determination of the amount of actual damages, restitution may be awarded in an amount no greater than that alleged in the counts of the indictment for which the conviction is had. We so interpreted the FPA over four decades ago. *Karrell v. United States,* 181 F.2d 981, 986 (9th Cir.1950), *cert. denied,* 340 U.S. 891, 71 S.Ct. 206, 95 L.Ed. 646 (1950). The Supreme Court has similarly interpreted the VWPA. *Hughey v. United States,* 495 U.S. 411, 420, 110 S.Ct. 1979, 1984, 109 L.Ed.2d 408 (1990).

Thus, we have held that where a defendant pleads guilty and the plea agreement is silent on the amount of losses, the sentencing court is limited to imposing restitution in an amount no greater than that alleged in the counts to which the defendant pled guilty. *United States v. Orr,* 691 F.2d 431, 433–434 (9th Cir.1982). Furthermore, where a defendant pleads guilty and both the plea agreement and the indictment are silent on the amount of losses, no restitution may be awarded in the absence of a judicial determination of actual damages. *United States v. Whitney,* 838 F.2d 404, 404–405 (9th Cir. 1988), *amending* 785 F.2d 824 (9th Cir.1986). *Orr* and *Whitney* interpreted the FPA, but our precedents interpreting the FPA apply equally to the VWPA whenever the language of the two statutes permits adoption of the earlier interpretation. *Soderling,* 970 F.2d at 533. This limitation on the amount of restitution that may be awarded in the absence of a plea agreement or a judicial determination serves both the requirement of notice to the defendant and the requirement

that the amount of restitution be no greater than the amount of actual damages.

The district court did not specify whether the award of restitution was made pursuant to the FPA or the VWPA. Because restitution was ordered as a condition of probation, it is governed by the FPA. 18 U.S.C. § 3651. The VWPA is also implicated, because Parrott pled guilty to a count of mail fraud, a crime within the scope of 18 U.S.C. § 3663(a)(1).

But in the absence of a plea agreement or a judicial determination, no more than $103,400 in restitution could have been ordered under either the FPA or the VWPA. This amount, and no more, is the amount to which Parrott admitted by pleading guilty to counts 1 and 11 of the indictment, and is thus the maximum established loss caused by the specific conduct that is the basis of the offense of conviction.

We reach this conclusion even though, as the government points out, Parrott admitted to a "scheme" of conduct. The scheme admitted by Parrott involved losses of only $103,400, not the $350,000 alleged in the indictment. As we stated in *Sharp*, 941 F.2d at 815, "[t]o permit a greater offense to be incorporated by reference into each count of the indictment destroys the plea bargain process. * * * [T]he essence of a plea agreement is that both the prosecution and the defense make concessions to avoid potential losses." The government concedes little if it agrees to dismiss 15 of 17 counts in return for a plea which exposes the defendant to liability for the entire $350,000 of alleged damages. We cannot infer, on the record before us, that Parrott agreed to such a bargain.

The government cites *Duvall* and *United States v. Bennett*, 943 F.2d 738 (7th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2970, 119 L.Ed.2d 590 (1992), for the proposition that a defendant who pleads guilty to a scheme of conduct may be ordered to pay restitution in the entire amount alleged in the indictment even though the defendant pled to only a small portion of conduct which constituted the alleged scheme. However, *Duvall* and *Bennett* are clearly distinguishable from the present case. In both *Duvall* and *Bennett*, the scheme of conduct to which defendants pled guilty was an element of the offense. Yet, defendants in both of those cases acknowledged the entire scope of the scheme in the plea agreement and expressly agreed to pay restitution on the basis of that scheme's entire scope. *Duvall*, 926 F.2d at 876; *Bennett*, 943 F.2d at 739. Parrott did no such thing.

Nor does *United States v. Hammer*, 967 F.2d 339 (9th Cir.1992) support the government's position. The court in *Hammer* held that the district court had authority to impose restitution to all victims of Hammer's fraud scheme, not just those who received mailings subject to the counts to which Hammer pled guilty.[1]

In so holding, the *Hammer* court relied on *United States v. Van Cauwenberghe*, 827 F.2d 424 (9th Cir.1987), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988). *Van Cauwenberghe* affirmed the proposition that the restitution is limited to the *amounts* alleged in the counts of conviction, but held that restitution is not limited to victims named in those counts. *Id.*, at 434. Restitution for the entire amount of the fraudulent scheme was appropriate in that case because the entire amount was alleged in the specific count of conviction, and thus gave the defendant "fair notice of the damages the government intended to prove". *Id.*, at 435. Due to *Hammer*'s reliance on *Van Cauwenberghe*, we assume that the entire amount of the fraudulent scheme in *Hammer* was specifically alleged in the counts of conviction.[2]

In this case, in contrast, Count One is limited to the sale of shares worth $103,400. Although the preamble of the indictment alleges that Parrott converted $350,000 of the

---

1. The question of the amount of restitution was not squarely presented.

2. *Hammer* also relied on *Phillips v. United States*, 679 F.2d 192 (9th Cir.1982), in which the defendant had agreed in the plea agreement to pay an amount of restitution in excess of the amount alleged in the counts of conviction. In clear dicta, the *Phillips* court broadly stated that restitution may be ordered for losses caused by the entire scheme of mail fraud rather than that caused by the particular mailing for which the defendant was convicted, because a mail fraud offense "includes the fraudulent scheme alleged as an element of the offense". *Id.*, at 196.

victim's money, that amount is not specifically alleged in Count One. Further, Count Eleven, alleging the mailing of a monthly statement, does not specify a dollar amount. By pleading guilty to Counts One and Eleven, Parrott did not have "fair notice" that he would be liable for $350,000 in restitution.

The government also argues that, in fact, Parrott did admit to causing losses of $350,000. But at the plea hearing, to which the government points in support of this argument, Parrott merely indicated that he was aware of the allegations of the indictment. He did not admit to those allegations. Indeed, we have held that even where a defendant stipulates to an amount of victim's losses for other purposes, the stipulated amount is not determinative of the amount of restitution absent indications that the parties intended it to be so. *United States v. Black,* 767 F.2d 1334, 1344 (9th Cir.1985) *cert. denied,* 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985)

Because Parrott did not agree to make restitution in the amount of $350,000 pursuant to a fully-negotiated plea agreement and there was no other judicial determination of actual losses caused by Parrott's conduct, the district court properly reduced the amount of restitution to $103,400. The district court did not abuse its discretion by ordering restitution in this amount.

### B. *Length of Sentence.*

Parrott asserts that the district court improperly considered the full $350,000 alleged in the indictment when determining Parrott's prison sentence. The legality of a criminal sentence is reviewed de novo. If the sentence complies with statutory requirements and limits, we review it for an abuse of discretion. *Snider,* 957 F.2d at 705.

The court sentenced Parrott to four years imprisonment for count 1 of the indictment, the securities violation. Because the offense occurred before November 1, 1987, the sentencing guidelines do not apply. *United States v. Rewald,* 835 F.2d 215, 216 (9th Cir.1987). The maximum sentence authorized for Parrott's securities fraud violation is a term of five years imprisonment. 15 U.S.C. § 78ff. Parrott's sentence falls within the statutory maximum.

A motion brought under § 2255 must be denied unless it affirmatively appears from the record that the district court based its sentence on improper information. *Farrow v. United States,* 580 F.2d 1339, 1359 (9th Cir.1978). Even if the district court's initial sentence determination was improperly based on consideration of the total $350,000 alleged in the indictment, the district court considered the sentence appropriate even after reducing the amount of restitution to $103,400. The district court, in any event, did not sentence Parrott based on the amount of the restitution to be ordered, but instead, sentenced him based on the seriousness of his crime. We find no abuse of discretion in the district court having determined that this crime called for four years imprisonment.

### C. *Consecutive Sentencing.*

Parrott argues that he should not be required to serve the federal prison sentence consecutively to his state sentence for burglary. This legal issue is reviewed de novo. *Sharp,* 941 F.2d at 814. We find no error on the part of the district court.

In *United States v. Thornton,* 710 F.2d 513, 516 (9th Cir.1983), we held that although former 18 U.S.C. § 3568 limits the authority of district courts to order federal sentences of imprisonment to run concurrently with previously-imposed state sentences, there is no limit on the authority to order that the federal sentence not begin until completion of the state sentence; that is, consecutively. But the three-judge panel in *United States v. Terrovona,* 785 F.2d 767, 770 (9th Cir.1986), *cert. denied,* 476 U.S. 1186, 106 S.Ct. 2926, 91 L.Ed.2d 553 (1986), concluded that district courts may not order consecutive sentences under § 3568, and may only make a recommendation to the Bureau of Prisons. Former § 3568 was repealed by Pub.L. 98–473, tit. II, § 212(a)(2), 98 Stat. 1987, 2031 (1984), but applies where, as here, the crimes were committed before November 1, 1987.

*Thornton* and *Terrovona* were in direct conflict until *United States v. Hardesty,* 977 F.2d 1347 (9th Cir., 1992), clarified the law on consecutive sentences in the Ninth Circuit. In *Hardesty,* defendant was convicted

in federal district court for possession of a sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871 and sentenced to ten years in prison. The district court ordered that Hardesty's sentence run consecutively to a state prison sentence that he was serving at the time of his federal conviction. Relying on *Terrovona*, Hardesty argued that the consecutive sentence was illegal and filed a motion to correct the sentence. The government relied on *Thornton* in opposing Hardesty's motion. After reviewing the conflict between *Terrovona* and *Thornton*, the *en banc* panel in *Hardesty* held that the district court did not err in ordering Hardesty's sentence to run consecutively to his undischarged state sentence and overruled *Terrovona* to the extent that it is inconsistent with *Thornton*. *Id.* at 1349. In so doing, *Hardesty* unequivocally held that consecutive sentencing is permitted by law in the Ninth Circuit.

### D. *Terms of Probation.*

We review de novo Parrott's challenges to the district court's authority to require, as terms of probation, psychiatric or psychological counseling and notice of his conviction to his employers. *Sharp*, 941 F.2d at 814. If within the statutory guidelines, the district court's order is reviewed for abuse of discretion. *Snider*, 957 F.2d at 705.

These terms are permitted under either the FPA or the VWPA. The FPA gives broad authority to place a defendant on probation "upon such terms and conditions as the court deems best." 18 U.S.C. § 3651. The VWPA expressly authorizes psychiatric or psychological treatment, 18 U.S.C. § 3563(b)(10), and permits "such other conditions as the court may impose." 18 U.S.C. § 3563(b)(21).

In *United States v. Woodward*, 726 F.2d 1320 (9th Cir.1983), *rev'd in part on other grounds*, 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985), *on remand*, 755 F.2d 1389 (9th Cir.1985), cited by Parrott, we invalidated a notice requirement imposed by the district court without limitation and not as a term of probation. 726 F.2d at 1328 n. 14. *Woodward* does not govern.

### E. *Remaining Issues.*

We decline to reach Parrott's argument, raised for the first time in his reply brief, that the mail fraud count should have been dismissed which, in any event, is wholly at odds with the only evidence in the record, Parrott's plea of guilty. Although Parrott now argues that the allegations on count 11 of the indictment do not state a violation of 18 U.S.C. § 1341, at the plea hearing Parrott expressly conceded that his conduct was in furtherance of a scheme to defraud and a violation of the federal laws against mail fraud. We decline also to consider Parrott's argument, proffered for the first time in his reply brief, regarding performance of his attorney.

Because all aspects of the sentence are affirmed, Parrott's request that this matter be remanded to a different district court judge for resentencing is denied as moot. For the same reason, Parrott's motion for release from custody pursuant to FRAP 9(b) is denied as meritless.

### III.

The district court's order, modifying the amount of restitution to be paid and denying Parrott's § 2255 motion in all other respects, is **AFFIRMED.**