# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

E. SANCHEZ; R. SANCHEZ; C.
RODRIGUEZ; S. FIGUEROA,
   *Plaintiffs-Appellees,*

    v.

JAMES CANALES, LAPD Sergeant;
WESLEY WOO; RUBEN GONZALEZ
WILLIAM LANTZ; MAX REDE; ALEX
RONQUILLO,
   *Defendants-Appellants.*

No. 06-55584

D.C. No.
CV-04-09991-ABC

OPINION

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, District Judge, Presiding

Argued and Submitted
November 21, 2008—Pasadena, California

Filed July 30, 2009

Before: Richard D. Cudahy,* Harry Pregerson and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Hawkins;
Dissent by Judge Pregerson

---

*The Honorable Richard D. Cudahy, Senior United States Circuit Judge
for the Seventh Circuit, sitting by designation.

9957

**COUNSEL**

Marion R. Yagman (presented oral argument) and Stephen Yagman (authored brief), Yagman & Yagman & Reichmann, Venice Beach, California, for the appellees.

Blithe S. Bock, Deputy City Attorney (authored brief and presented oral argument), Los Angeles, California, for the appellants.

---

**OPINION**

HAWKINS, Circuit Judge:

James Canales, Wesley Woo, Ruben Gonzalez, William Lantz, Max Rede, and Alex Ronquillo (collectively, the "Defendants") appeal the partial denial of qualified immunity in this 42 U.S.C. § 1983 action, arguing that any detention of Eva Sanchez, Ruben Sanchez, Carmen Rodriguez, and Maria Socorro Figueroa (collectively, the "Plaintiffs") was constitutionally reasonable. The sole question on appeal is, assuming the Plaintiffs were detained during a legal search of their home, was the detention a violation of their clearly established constitutional rights? We conclude it was not and therefore reverse and remand.

## I.   BACKGROUND

### A.   Factual Background

"Assuming [the plaintiffs'] version of the material facts is correct, as we must in the context of an interlocutory appeal of a qualified immunity decision," *CarePartners, LLC v. Lashway*, 545 F.3d 867, 878 (9th Cir. 2008), the record establishes the following:

Due to an increase in robberies in the Wilshire area, Los Angeles Police Department's Career Criminal Detail ("CCD") began conducting probation compliance checks on probationers with prior arrests for robbery living in the Wilshire area. As a condition of their release, every probationer in California is required to "submit his . . . person, property, place of residence, vehicle, [and] personal effects, to search at any time, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or officer of the law."

Officer James Canales, a defendant in this case, obtained a list of such probationers from Deputy Probation Officer Wesley Woo, another defendant. Oscar Sanchez ("Oscar") was included in the list because police records indicated he was still on probation, had committed prior robberies, and lived in the area. Oscar's address of record was that of his parents, Eva and Ruben Sanchez ("Eva" and "Ruben," respectively).

The CCD officers reviewed and verified the accuracy of the records and cross-referenced their list against county jail records, eliminating from the list several probationers who were incarcerated in county jail. Oscar, it turns out, was incarcerated in *state* prison at the time, but nonetheless remained on the list because the CCD officers did not have ready access to state prison records.

Officers Canales and Woo and six other CCD officers (collectively, the "Officers") arrived at Eva's and Ruben's home around 6:00 a.m. The Officers woke the family by knocking on the door and shouting at the home's occupants to open the door. Eva, Ruben, Oscar's grandmother ("Carmen"), sister ("Maria"), and four-year-old nephew ("Ramiro") were all inside the residence. Maria began to open the door, but closed it when she saw that it was the police. The Officers continued knocking loudly, demanding to see Oscar, and threatening to break the door down if the family did not cooperate. Eva repeatedly told the Officers in Spanish that Oscar was in

prison. At least one officer spoke Spanish and acted as a translator.

When Eva finally opened the latch, the Officers pulled the door open and entered the house. The Officers ordered the family outside so they could search the home safely, although they allowed Carmen, who was suffering from cancer, to remain inside on a couch. The family remained outside in the small front yard for some time between ten and forty-five minutes. When the Officers allowed the family back inside the house, Ruben showed them a letter Oscar had recently sent the family from prison, as proof he was incarcerated there. The Officers remained for ten more minutes, and then departed.

## B.  Procedural Background

The Plaintiffs subsequently filed suit against the Officers under 42 U.S.C. § 1983, claiming unlawful entry and search, excessive force, and unlawful detention in violation of the Fourth and Fourteenth Amendments. Following discovery, the Officers moved for summary judgment, asserting qualified immunity from suit on each claim.

The district court granted qualified immunity with respect to the search and excessive force claims. Citing our recent decision in *Motley v. Parks*, 432 F.3d 1072 (9th Cir. 2005), the court first concluded the Officers had probable cause to believe Oscar was at home, notwithstanding Eva's statement to the contrary at the front door. It then considered whether the Officers could "conduct the probation search without suspicion of wrongdoing," granting immunity because it had not been clearly established "what level of suspicion, if any, was required prior to the . . . search of Plaintiffs' residence."[1] The

---

[1]The Supreme Court has since clarified that if a parolee has agreed to submit to warrantless searches as "a condition of release," subsequent "*suspicionless* search[es] by a law enforcement officer [do] not offend the Fourth Amendment." *Samson v. California*, 547 U.S. 843, 847 (2006) (emphasis added).

court found additionally that "Plaintiffs have failed to articulate any actions by Defendants that would support a finding that the Defendants acted unreasonably during the search," and "no facts show that any of the Officer Defendants used excessive force against the Plaintiffs."

The district court denied qualified immunity, however, on the unconstitutional detention claim. The court first addressed whether the Officers had seized the Sanchez family within the meaning of the Fourth Amendment, concluding there was "sufficient evidence to raise a triable issue as to whether, under the circumstances, a 'reasonable person would have felt that he was not at liberty to ignore the police presence and go about his business.' " The court next concluded that Supreme Court and Ninth Circuit case law did not authorize Officers to detain "third parties" on the premises while conducting a probation compliance search, and—without addressing whether the law was clearly established one way or another—denied qualified immunity on the detention claim. The Officers timely appealed.

## II.   JURISDICTION AND STANDARD OF REVIEW

We have interlocutory appellate jurisdiction pursuant to 28 U.S.C. § 1291 to review the partial denial of qualified immunity in this 42 U.S.C. § 1983 action. *See Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985).

The district court's grant of qualified immunity with respect to the search and excessive force claims is not independently interlocutorily appealable. *Krug v. Lutz*, 329 F.3d 692, 694 n.2 (9th Cir. 2003). Although we may take pendant jurisdiction to review a grant of qualified immunity on interlocutory appeal if it is "inextricably entwined" with a denial of qualified immunity, *Watkins v. City of Oakland*, 145 F.3d 1087, 1091 (9th Cir. 1998), this is not such a case, nor do the Plaintiffs argue it is. We therefore lack jurisdiction to review the district court's partial *grant* of qualified immunity on the

search and excessive force claims and may consider only the *denial* of qualified immunity on the unconstitutional detention claim.

The district court also concluded that there were triable issues with respect to whether a detention took place. Our interlocutory jurisdiction to review a denial of qualified immunity is limited exclusively to questions of law, which we review de novo. *Lee v. Gregory*, 363 F.3d 931, 932 (9th Cir. 2004). A district court's determination that the parties' evidence presents genuine issues of material fact is categorically not reviewable on interlocutory appeal. *Id.* (citing *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1291 (9th Cir. 1999)). "Where disputed facts exist, we assume that the version of the material facts asserted by Plaintiffs, as the non-moving party, is correct." *KRL v. Estate of Moore*, 512 F.3d 1184, 1189 (9th Cir. 2008).

## III.   DISCUSSION

We hold, pursuant to *Muehler v. Mena*, 544 U.S. 93 (2005), that officers may constitutionally detain the occupants of a home during a parole or probation compliance search. Accordingly—assuming without deciding, as we must, that the officers had probable cause to believe Oscar was at home and the Plaintiffs were detained during the search—we conclude that any such detention was not a violation of the Plaintiffs' clearly established constitutional rights.[2]

We begin with *Muehler*. There, SWAT officers executed a search warrant at a private residence occupied by Iris Mena

---

[2]Because we lack jurisdiction to review a grant of qualified immunity, we neither approve nor criticize any "failure of due diligence on the part of law enforcement" to verify whether Oscar was at home. *See* Dissent at 3. The law requires instead that we leave for another panel of this court the legality of the search, assuming the plaintiffs wish to appeal once the district court has entered a final judgment. *See Krug*, 329 F.3d at 694 n.2.

and several others. In the process of executing the warrant, the officers entered Mena's bedroom and "placed her in handcuffs at gunpoint." *Id.* at 96. The SWAT officers then took Mena and the other occupants into a "converted garage," where they "remained in handcuffs" for three hours, under guard, while the police completed searching the home. *Id.*

Mena, who had committed no crime, brought suit under § 1983, claiming that she had been detained "for an unreasonable time and in an unreasonable manner" in violation of the Fourth Amendment. *Id.* The jury concluded that Mena's detention had indeed been unreasonable and awarded damages. *Id.* On appeal, we affirmed, concluding that the officers "should have released Mena as soon as it became clear that she posed no immediate threat." *Id.* (citing *Mena v. City of Simi Valley*, 332 F.3d 1255, 1263-64 (9th Cir. 2003)).

**[1]** The Supreme Court reversed, concluding that "officers executing a search warrant for contraband have the authority 'to detain the occupants of the premises while a proper search is conducted' " regardless of whether or not the occupants appear dangerous. *Id.* at 98 (quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). The court reasoned that in a search of a private home, "the additional intrusion caused by detention is slight" while "the justifications for detention are substantial." *Id.* (citing *Summers*, 452 U.S. at 701-05). Those justifications include (1) "preventing flight in the event that incriminating evidence is found"; (2) "minimizing the risk of harm to the officers"; and (3) "facilitating the orderly completion of the search . . . [while] avoid[ing] the use of force." *Id.* (quoting *Summers*, 452 U.S. at 702-03) (internal quotations omitted). Given these underlying interests, officers may detain occupants of a home they are searching pursuant to a search warrant: "Mena's detention for the duration of the search was reasonable . . . because a warrant existed to search 1363 Patricia Avenue and she was an occupant of that address at the time of the search." *Id.*; *see also Los Angeles County*

*v. Rettele*, 127 S. Ct. 1989 (2007) (discussing and reaffirming *Muehler*).

The district court held *Muehler* inapplicable here because the Sanchez home was subject to a warrantless probation compliance search, whereas "important to the analysis in *Muehler* was the presence of a search warrant." We are unpersuaded by this distinction, for two reasons.

[2] First, the three justifications underlying the Supreme Court's decision in *Muehler* appear to be present in every valid home search, whether or not the search is supported by a warrant. Either way, "the additional intrusion caused by detention is slight" and "the justifications for detention are substantial": the law should always be concerned to prevent the flight of criminals, ensure officer safety, and facilitate orderly completions of valid searches—warrant or no warrant. *See Muehler*, 544 U.S. at 98.

[3] Second, any reason to think the presence of a warrant was relevant to the outcome in *Muehler* is equally present in warrantless probation and parole compliance searches. In the first place, "[i]f the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home." *Summers*, 452 U.S. at 704-05. There is no question, however, that parole and probation conditions are also categorically sufficient to justify the invasion of privacy entailed by a home search. *See Samson v. California*, 547 U.S. 843, 847 (2006) (where a parolee has agreed to submit to warrantless searches as "a condition of release," subsequent warrantless, "suspicionless search[es] by a law enforcement officer [do] not offend the Fourth Amendment"); *see also Motley*, 432 F.3d 1072 (same).[3]

---

[3]Although both *Samson* and *Motley* were parole rather than probation cases, we have "consistently recognized that there is no 'constitutional dif-

**[4]** Given that police officers may search the home of a parolee or probationer "without a warrant" and without "run[ning] afoul of the Fourth Amendment" so long as "the officers have [probable cause to believe] that they are at the address where . . . the parolee . . . resides," *Motley*, 432 F.3d at 1079, there is no need to be concerned that a neutral magistrate had not approved the reasonableness of the compliance search. *See generally Samson*, 547 U.S. at 848 ("[P]arolees . . . have severely diminished expectations of privacy by virtue of their status alone."); *Motley*, 432 F.3d at 1080 (implying limitations on the "the interest of third parties" who are co-occupants of a parolee's home). Just as in a search pursuant to a search warrant, therefore, "it is constitutionally reasonable to require [the occupant of a home] to remain while officers of the law execute a valid [probation compliance] search." *Summers*, 452 U.S. at 704-05.

The presence of a search warrant was also relevant to *Muehler*'s analysis "because the probable cause underlying a warrant to search a premises gives police reason to suspect that its occupants are involved in criminal activity." *United States v. Jennings*, 544 F.3d 815, 818 (7th Cir. 2008). But a search warrant is not, of course, the only basis for a heightened suspicion that a home's occupants might be involved in criminal activity. The very same concern applies here: as the Supreme Court has previously explained, " 'parolees . . . are more likely [than ordinary citizens] to commit future criminal offenses.' " *Samson*, 547 U.S. at 853 (quoting *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 365 (1998)).

**[5]** Thus there is no reason to conclude that *Muehler* means "officers may take reasonable action to secure the premises

---

ference between probation and parole for purposes of the fourth amendment.' " *Motley*, 432 F.3d at 1083 n.9 (quoting *Moreno v. Baca*, 400 F.3d 1152, 1168 n.12 (9th Cir. 2005)).

and to ensure their own safety and the efficacy of the search" *only* when the search is conducted pursuant to a search warrant but *not* to a probation or parole compliance check. *See Rettele*, 127 S. Ct. at 1992.[4] To the contrary, *Muehler*'s underlying justifications permitting detentions during home searches apply with full force here, notwithstanding the absence of a search warrant. Just as in *Muehler*, "the additional intrusion caused by detention is slight" while "the justifications for detention are substantial." *Muehler*, 544 U.S. at 98. (citing *Summers*, 452 U.S. at 701-05). We therefore conclude—assuming without deciding that the officers had probable cause to believe Oscar was at home and that a detention took place—that the detention was constitutionally reasonable.[5]

**[6]** We remand to the district court with instructions to grant qualified immunity on the unreasonable detention claim.

## REVERSED AND REMANDED.

---

PREGERSON, Circuit Judge, Dissenting:

I agree with District Court Judge Audrey B. Collins's ultimate disposition of this case, *Sanchez v. Bratton*, No. CV 04-9991 ABC (SSX), 2006 WL 802328, at *11-14 (C.D. Cal., Mar. 14, 2006), and her conclusion that the "Plaintiffs have

---

[4]Although the district court found it relevant that the officers here were not "searching for weapons, evidence of gang membership, or contraband," the *Muehler* Court made clear that "[a]n officer's authority to detain incident to a search is categorical," *Muehler*, 544 U.S. at 98, and does not depend on such extraneous circumstances as the motivation for the search.

[5]The Dissent proposes we affirm the denial of qualified immunity for the detention claim because the *search* was conducted without "due diligence" and in an inappropriate manner. *See* Dissent 3. Once again, however, the legality of the search is not a question presented here.

raised a triable issue of fact . . . as to their claim of unlawful detention, and further, that the Officer Defendants are not entitled to qualified immunity on that claim." *Id.* at *5. I therefore dissent.

I am also troubled by how law enforcement officers carelessly executed the warrantless probation search of the Sanchez residence. The warrantless search took place around 6 a.m. on December 5, 2003, when the Sanchez family was awakened by eight officers pounding at their door. Oscar Sanchez, the object of the search, was not at home, and Oscar's mother, Eva, repeatedly told the officers that Oscar was in prison. But not a single officer, nor their leader, made any attempt to verify whether this information was correct. Instead, the officers ordered the family,[1] clad only in their night clothes, to go outside where they stood in the cold,[2] dark[3] morning for forty-five minutes[4] while the officers searched their home looking for Oscar.

---

[1]The officers permitted Carmen, Oscar's grandmother who was recovering from cancer surgery, to remain inside the house on a couch.

[2]Eva Sanchez, Oscar's mother, noted in her deposition that when she stepped outside her home on December 5, 2003, "[i]t was cold." Furthermore, according to the charts of the National Climatic Data Center, the outside temperature in Los Angeles was 49 degrees Fahrenheit at 5:47 a.m. on December 5, 2003, and 50 degrees at 6:47a.m. *See* National Climatic Data Center, Los Angeles: Downtown L.A./USC Campus, Unedited Local Climatological Data Hourly Observations Table, http://cdo.ncdc.noaa.gov/ulcd/ULCD (last visited June 16, 2009). I take judicial notice of these facts. *See* Fed. R. Evid. 201.

[3]According to the charts calculated by the United States Naval Observatory, the sun rose in Los Angeles on December 5, 2003 at 6:44 a.m. *See* U.S. Naval Observatory, http://aa.usno.navy.mil/data/docs/RS_OneDay.php (last visited June 16, 2009). I take judicial notice of this fact. *See* Fed. R. Evid. 201. Because the officers began their search around 6 a.m. and the Sanchez family waited for forty-five minutes outside their home during the search, the family spent much of that time in the dark.

[4]There is some ambiguity regarding how long the Sanchez family was detained outside their home. Because we are considering Defendants' summary judgment motion on the issue of qualified immunity, we must view the facts in the light most favorable to the party asserting the injury. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Accordingly, we assume that the detention lasted forty-five minutes, the longest duration asserted by Eva Sanchez.

But as Oscar Sanchez's mother repeatedly told the officers, Oscar was behind bars at California's Tehachapi Correctional Institution. In fact, he had been in prison during the preceding ten months, since February 2003. Yet the record fails to show that any law enforcement officer ever tried to call Oscar's probation officer to verify his whereabouts. Nor did any law enforcement officer run a current rap sheet on Oscar. Nor did any officer bother to call California prison authorities or the Department of Corrections's inmate locator hotline to determine whether Oscar was in state prison, even though an officer did check Los Angeles County Jail records to no avail. Such an egregious failure of due diligence on the part of law enforcement to the detriment of innocent parties should not be condoned. Additional investigation would have taken only minutes, and would have spared the Sanchez family the anxiety of being ordered to stand in their yard, in their night clothes, in the dark, and in the cold, under the curious eyes of neighbors for forty-five minutes while the officers searched their home for Oscar.

I would, therefore, affirm the district court's decision to deny summary judgment to the officers based on qualified immunity on the Sanchez family's 42 U.S.C. § 1983 unlawful detention claim. Accordingly, I dissent.