**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

           v.

ROBERT BAKER,
           *Defendant-Appellant.*

No. 10-10223

D.C. No.
3:09-cr-00966-
CRB-2

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
July 14, 2011—San Francisco, California

Filed September 20, 2011

Before: Barry G. Silverman and Susan P. Graber,
Circuit Judges, and Barbara M. G. Lynn, District Judge.*

Opinion by Judge Graber;
Concurrence by Judge Graber

---

*The Honorable Barbara M. G. Lynn, United States District Judge for the Northern District of Texas, sitting by designation.

## COUNSEL

Jay A. Nelson and Ethan A. Balogh, Coleman & Balogh LLP, San Francisco, California, for the defendant-appellant.

Susan Gray and Erika R. Frick, Assistant United States Attorneys, San Francisco, California, for the plaintiff-appellee.

## OPINION

GRABER, Circuit Judge:

A jury convicted Defendant Robert Baker of misdemeanor possession of methamphetamine but acquitted him of more serious felony drug charges. The district court sentenced Defendant to three years' probation. Defendant timely appeals his conviction and two conditions of probation, one permitting suspicionless searches and one requiring Defendant to submit to DNA collection. We affirm the conviction and the suspicionless search condition but, because the district court exceeded its statutory authority by imposing the DNA condition, we reverse with instructions to strike that condition and to order expungement of DNA records collected pursuant to it.

## FACTUAL AND PROCEDURAL HISTORY

After a high-speed chase in northern California, police arrested the driver, whose involvement is not material here, and the passenger, who was Defendant. Police officers discovered in the vehicle 10 grams of a white substance that later proved to be 99.1% pure methamphetamine.

The government indicted Defendant for crimes involving a much greater amount of methamphetamine than the amount found in the vehicle: one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine and one count of distribution and possession with intent to distribute 50 grams or more of methamphetamine. The government's theory of the case was that, during the car chase, Defendant had thrown large quantities of methamphet-

amine from the car and that those amounts clearly totaled more than 50 grams of methamphetamine. The only evidence supporting that theory was the testimony of two police officers who were in the lead pursuit vehicle during the high-speed chase. Those officers testified that, twice, their police car was pelted by bags, thrown from Defendant's vehicle, each containing a large quantity of a white substance that created a "snowstorm" effect for a period of three to five seconds. The government argued that the jury should infer that those bags contained methamphetamine and that Defendant intended to distribute a large amount of methamphetamine.

At trial, Defendant exposed several weaknesses in the government's case, including the fact that, during the chase, neither of the testifying officers had relayed the occurrence of a "snowstorm" to police dispatch. Most relevant here, Defendant also called as his sole witness Deputy Michael Thompson. Deputy Thompson participated in the high-speed chase and never saw the "snowstorm" described by the two other officers.

The defense strategy worked. The jury acquitted Defendant of both felony counts but found him guilty of the lesser-included misdemeanor offense of knowingly and intentionally possessing methamphetamine, in violation of 21 U.S.C. § 844(a). In a special verdict form, the jury found that the offense involved 9.91 grams of actual methamphetamine, which corresponds precisely to the amount found in Defendant's vehicle.

Defendant moved to dismiss the indictment in its entirety because of an allegedly egregious violation by the government of its *Brady* obligations. According to Defendant, the government originally listed Deputy Thompson on its witness list but later removed him. Defendant's theory, repeated on appeal, is that the government removed Deputy Thompson from the witness list once it learned that he had not seen a "snowstorm" and that the government failed to disclose that

information, in violation of its *Brady* obligations. The district court denied the motion.[1]

The district court sentenced Defendant to three years' probation. Defendant challenged, among other things, two conditions of probation. The first challenged condition permits suspicionless searches by a probation officer or other law enforcement officer. The second challenged condition requires Defendant to submit to DNA collection. The district court rejected Defendant's challenges to those conditions and issued a final judgment that includes the conditions. Defendant timely appeals.

## STANDARDS OF REVIEW

"We review de novo challenges to a conviction based on alleged *Brady* violations." *United States v. Woodley*, 9 F.3d 774, 777 (9th Cir. 1993). "We are divided as to whether the denial of a motion to dismiss an indictment is reviewed de novo or for an abuse of discretion." *Id.* As in *Woodley*, "[w]e need not decide which standard applies here because we affirm the ruling under either standard." *Id.*

We review de novo the district court's authority to impose a condition of probation. *United States v. Parrott*, 992 F.2d 914, 920 (9th Cir. 1993). The government states, correctly, that "we review conditions of probation for an abuse of discretion." *United States v. Clark*, 918 F.2d 843, 847 (9th Cir. 1990), *overruled on other grounds by United States v. Keys*, 95 F.3d 874 (9th Cir. 1996) (en banc). But Defendant argues that the district court exceeded its constitutional authority by imposing the search condition and exceeded its statutory

---

[1]At the time of the oral motion, the district court expressed skepticism that there had been a *Brady* violation and deferred ruling on the motion. *Brady v. Maryland*, 373 U.S. 83 (1963). Although the district court never ruled on the motion expressly, the parties agree that the court's entry of judgment constitutes an implicit denial.

authority by imposing the DNA condition. Because Defendant argues that the district court exceeded its legal authority, no discretion is involved; our review is de novo. *Parrott*, 992 F.2d at 920; *see United States v. Begay*, 622 F.3d 1187, 1193 (9th Cir. 2010) ("We review issues pertaining to statutory interpretation and constitutional law de novo."), *cert. denied*, 131 S. Ct. 3026, *and* 131 S. Ct. 3027 (2011).

## DISCUSSION

A.  *Motion to Dismiss the Indictment*

[1] Defendant first argues that the government's failure to disclose Deputy Thompson's statement—that he did not see a white substance thrown from the vehicle in which Defendant was riding—constitutes a *Brady* violation. We disagree. Defendant was given access to the police tapes and the police reports. Those pieces of evidence, including Deputy Thompson's police report, nowhere mentioned a "snowstorm" or objects thrown from Defendant's vehicle. It was, therefore, a reasonable inference from the materials disclosed already that Deputy Thompson had not seen the alleged "snowstorm." *Cf. United States v. Houston*, No. 07-50478, 2011 WL 3319423, at *4 (9th Cir. Aug. 3, 2011) (holding that there was no "plain *Brady* error" for similar governmental conduct involving proof of a negative). Indeed, Defendant subpoenaed Deputy Thompson, likely for that very reason. We affirm the district court's denial of Defendant's motion to dismiss and, accordingly, affirm Defendant's conviction.

B.  *"Suspicionless Search" Condition of Probation*

Defendant challenges the probation condition that permits a suspicionless search:

> The defendant shall submit his person, property, place of residence, vehicle and personal effects to search at any time of the day or night, with or with-

out a warrant, with or without probable cause, and
with or without reasonable suspicion, by a probation
officer or any federal, state, or local law enforcement
officer. Failure to submit to a search may be grounds
for revocation. The defendant shall warn any resi-
dents that the premises may be subject to search.

Defendant argues that the foregoing condition violates the
Fourth Amendment.

1.  *Ripeness*

The government first argues that, because Defendant has
not been, and may never be, subjected to a suspicionless
search, his challenge to the probation condition is not ripe.
According to the government, if Defendant is subjected to a
suspicionless search and Defendant is harmed, then—but not
until then—Defendant may challenge the condition and the
resulting search. We disagree.

The government's argument finds support in some of our
cases. For instance, in *United States v. Abbouchi*, 502 F.3d
850, 859 (9th Cir. 2007), we held, with little analysis, that "it
is premature to decide Abbouchi's challenge to the require-
ment that he answer truthfully any questions asked of him by
the probation officer. Nothing prevents Abbouchi from raising
a Fifth Amendment issue should it arise." Similarly, in *United
States v. Streich*, 560 F.3d 926 (9th Cir.), *cert. denied*, 130 S.
Ct. 320 (2009), we held that a "claim is not ripe if it involves
contingent future events that may not occur as anticipated, or
indeed may not occur at all." *Id.* at 931 (internal quotation
marks omitted). Applying that standard, we held that the
defendant's feared civil commitment because of the inclusion
of certain information in the presentence report "strikes us as
the classic example of a contingent future event that may not
happen at all." *Id.* at 932 (internal quotation marks omitted);
*see Sibron v. New York*, 392 U.S. 40, 59 (1968) (declining to
entertain a facial challenge to New York's "stop and frisk"

statute because the "constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case"); *Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008) (en banc) (holding that courts "generally review [Fourth Amendment] challenges in two discrete, *post-enforcement* settings: (1) a motion to suppress in a criminal case or (2) a damages claim under § 1983 or under *Bivens* against the officers who conducted the search" (citation truncated)).

But other cases, more directly on point, instruct that Defendant's claim here is ripe. As an initial matter, we have addressed the merits of facial challenges to similar conditions on direct appeal. *United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007); *United States v. Dupas*, 419 F.3d 916, 922 (9th Cir. 2005). In *Dupas*, 419 F.3d at 922 n.6, we rejected a constitutional challenge to a search condition with the caveat that "[t]here may be circumstances in which a search conducted pursuant to this condition would raise Fourth Amendment concerns, but we need not confront such circumstances here. We are asked to determine *only* the facial validity of the condition . . . ." In other words, we held that *some* challenges —those dependent on the factual circumstances of the search —were not yet ripe, but that a facial challenge—one not dependent on the factual circumstances—was ripe.

**[2]** Perhaps more to the point, we explained in *United States v. Weber*, 451 F.3d 552, 557 (9th Cir. 2006), that a "term of supervised release, even if contingent, is part and parcel of the defendant's sentence and can be challenged on direct appeal." In that case, the court imposed a condition requiring the defendant "to participate in a sexual offender treatment program and submit to various tests, including plethysmograph testing, as a part of that program." *Id.* at 556. "There is nothing in the record indicating that Weber has yet been ordered to undergo plethysmograph testing and it is not certain that he will ever be ordered to do so." *Id.* "Weber's

refusal to submit to plethysmograph testing once ordered would place him in violation of the terms of his supervised release." *Id.* But, we held, a "defendant need not refuse to abide by a condition of supervised release to challenge its legality on direct appeal from the imposition of sentence." *Id.* Accordingly, the defendant's claim on direct appeal was ripe. *Id.* We found support for the conclusion that facial challenges to supervised-release conditions are ripe on direct appeal in two other cases applying the same rule. *See id.* (discussing *United States v. Williams*, 356 F.3d 1045 (9th Cir. 2004), and *United States v. Rodriguez-Rodriguez*, 441 F.3d 767 (9th Cir. 2006)).

**[3]** Here, as in *Dupas*, we can address Defendant's facial challenge to the probation condition because his arguments do not depend on particular factual circumstances. Additionally, for purposes of ripeness, Defendant's challenge to the suspicionless search condition here is indistinguishable from the defendant's challenge to the condition of supervised release in *Weber*. Just as the defendant's challenge in *Weber* was ripe, Defendant's challenge here also is ripe.

### 2. *Fourth Amendment Analysis*

The government argues that it has a strong interest in protecting the public and that, as a probationer, Defendant has a reduced expectation of privacy and an increased risk of recidivism. Accordingly, the government argues, a suspicionless search condition does not violate the Fourth Amendment. Defendant counters that, although he has a reduced expectation of privacy, it is not reduced so much that a warrantless search, on the basis of no suspicion whatsoever, is reasonable. Defendant points out that he was convicted of a relatively minor misdemeanor drug offense and that the government's interest in protecting the public is therefore less than, for instance, the government's interest in supervising a convicted violent felon.

**[4]** We are bound by precedent to agree with the government. In *Samson v. California*, 547 U.S. 843, 846 (2006), the Supreme Court held that a suspicionless search of a parolee does not violate the Fourth Amendment. Since that case was decided, we have applied our rule that "there is no constitutional difference between probation and parole for purposes of the fourth amendment." *Motley v. Parks*, 432 F.3d 1072, 1083 n.9 (9th Cir. 2005) (en banc) *(internal quotation marks omitted); see Sanchez v. Canales*, 574 F.3d 1169, 1174 & n.3 (9th Cir. 2009) (applying the *Motley* rule and concluding that "parole and probation conditions are also categorically sufficient to justify the invasion of privacy entailed by a home search"). Because a suspicionless search of a parolee does not violate the Fourth Amendment, *Samson*, 547 U.S. at 850-56, and because our precedent dictates that "there is no constitutional difference between probation and parole for purposes of the fourth amendment," *Motley*, 432 F.3d at 1083 n.9, we must conclude that a suspicionless search of a probationer does not violate the Fourth Amendment.

**[5]** Defendant urges us to disregard our own precedent, but we may do so only if there is an intervening Supreme Court or en banc decision that is clearly irreconcilable with our own precedent. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc) ("We hold that . . . , where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of *intervening* higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled." (emphasis added)). Since we decided *Sanchez* in 2009, there has been no such intervening authority. Accordingly, we cannot ignore our own precedent, and we must reject Defendant's facial challenge to the probation condition.

C. *DNA Condition*

Under the heading "Probation," the final judgment orders Defendant to "cooperate in the collection of DNA as . . . directed by the probation officer." Defendant argues that the district court lacked statutory authority to impose this condition and asks that we remand with instructions to order the expungement of any DNA records collected pursuant to this erroneous probation condition.[2]

Title 42 U.S.C. § 14135a, titled "Collection and use of DNA identification information from certain Federal offenders" states:

(a) Collection of DNA samples

(1) **From individuals in custody**

(A) The Attorney General may, as prescribed by the Attorney General in regulation, collect DNA samples *from individuals who are arrested, facing charges, or convicted* or from non-United States persons who are detained under the authority of the United States. The Attorney General may delegate this function within the Department of Justice as provided in section 510 of Title 28, and may also authorize and direct any other agency of the United States that arrests or detains individuals or supervises individuals facing charges to carry out any function and exercise any power of the Attorney General under this section.

---

[2]We granted rehearing en banc in a case challenging the constitutionality of DNA conditions for persons arrested, but not yet convicted. *See United States v. Pool*, 621 F.3d 1213 (9th Cir. 2010) (upholding the constitutionality of the statute), *reh'g en banc granted*, 646 F.3d 659 (9th Cir. 2011). Because this case involves the question of *statutory authority* only, while *Pool* involves the *constitutionality* of a related but different statutory provision, we need not await the en banc panel's resolution of *Pool*.

(B) The Director of the Bureau of Prisons shall collect a DNA sample from each individual in the custody of the Bureau of Prisons who is, or has been, convicted of a qualifying Federal offense (as determined under subsection (d) of this section) . . . .

(2) **From individuals on release, parole, or probation**

The probation office responsible for the supervision under Federal law of an individual on probation, parole, or supervised release shall collect a DNA sample *from each such individual who is, or has been, convicted of a qualifying Federal offense* (as determined under subsection (d) of this section) . . . .

. . . .

(d) Qualifying Federal offenses

The offenses that shall be treated for purposes of this section as qualifying Federal offenses are the following offenses, as determined by the Attorney General:

(1) Any felony.

(2) Any offense under chapter 109A of Title 18.

(3) Any crime of violence (as that term is defined in section 16 of Title 18.

(4) Any attempt or conspiracy to commit any of the offenses in paragraphs (1) through (3).

(All emphases added.)

Defendant begins with § 14135a(a)**(2)**, which requires that a defendant be convicted of a "qualifying federal offense."

Defendant argues that, because he was not convicted of a "qualifying federal offense," the statute does not authorize the probation condition requiring that he give a DNA sample. Defendant carefully explains why his misdemeanor possession conviction does not fall into any of the four categories of qualifying federal offenses enumerated in § 14135a(d).

The government does not challenge that conclusion. That is, the government concedes that Defendant's conviction is *not* for a "qualifying federal offense" specified in § 14135a(d). Instead, the government begins with § 14135a(a)(**1**). As the government points out, that statutory provision is much broader and permits the Attorney General, through regulation, to collect DNA samples from any person who is "arrested, facing charges, or convicted"—without qualification. *Id.* § 14135a(a)(1)(A). The Attorney General has exercised that authority and promulgated a regulation directing federal agencies to collect DNA samples "from individuals who are arrested, facing charges, or convicted," with some exceptions not relevant here. 28 C.F.R. § 28.12(b). According to the government, whether or not subsection (a)(2) permits the probation condition at issue here is irrelevant, because subsection (a)(1) and the implementing regulation permit the condition.

**[6]** The government is incorrect. The plain text of the statute—the headings in particular[3]—demonstrate that subsection (a)(1) does not apply to Defendant, who is on probation. Subsection (a)(1) applies to "individuals in custody." Subsection (a)(2) applies to "individuals on release, parole, or probation." Because Defendant is on probation and not in custody, subsection (a)(2) applies and subsection (a)(1) does not apply. We therefore hold that the district court exceeded its statutory

---

[3]*See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (internal quotation marks omitted)).

authority by imposing the DNA condition. Accordingly, we remand with instructions that the district court strike the probation condition and, further, order that any DNA collected from Defendant pursuant to the probation condition be expunged. *See* 42 U.S.C. § 14132(d) (providing a procedure for expungement).[4]

## CONCLUSION

We affirm Defendant's conviction, and we uphold the imposition of the suspicionless search condition. But we hold that the district court exceeded its statutory authority by imposing the DNA condition. We remand to the district court for the limited purposes (a) of amending the judgment to delete the DNA condition and (b) of ordering expungement of DNA records collected pursuant to the condition.

**AFFIRMED in part, REVERSED in part, and REMANDED with instructions.**

GRABER, Circuit Judge, concurring:

I concur fully in the panel's opinion. I write separately to state my view that, by oversight, our recent opinions erroneously have foreclosed Defendant's potentially viable Fourth Amendment argument. Although a three-judge panel cannot correct that mistake, the en banc court can. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

---

[4]In his opening brief, Defendant argued that we should order expungement. In response, the government argued only that, because the condition is permissible, expungement is not appropriate. The government does not argue that, if the condition is impermissible, there are reasons why expungement is not appropriate. Because we see no reason why the district court should not order expungement and because the government has not supplied a reason, we agree with Defendant.

Defendant argues that the probation condition authorizing a suspicionless search violates the Fourth Amendment. The issue of search conditions has an important jurisprudential history. Before turning to that history, I note that the difference between *probation* and *parole* is important and, as discussed below, sometimes overlooked. Probation is a lesser form of punishment than imprisonment. Parole, which is the state-law equivalent of federal supervised release, is the early release of a prisoner subject to certain conditions. Functionally, they are very similar, with a violation of one of the conditions often resulting in imprisonment. Constitutionally, however, a parolee's expectation of privacy may not be identical to a probationer's expectation of privacy, as discussed below.

The first two relevant Supreme Court cases involved probationers. In *Griffin v. Wisconsin*, 483 U.S. 868, 870-71 (1987), the Supreme Court held that a search of a probationer's home without a warrant, but with "reasonable grounds" to believe the presence of contraband, did not violate the Fourth Amendment. In *United States v. Knights*, 534 U.S. 112, 119-22 (2001), the Supreme Court held that a search of a probationer's home with reasonable suspicion only (and not probable cause) did not violate the Fourth Amendment. The Court specifically noted that "[w]e do not decide whether the probation condition so diminished, or completely eliminated, Knights' reasonable expectation of privacy . . . that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment." *Id.* at 120 n.6. In other words, *Knights* left open the very question raised by Defendant here: whether a suspicionless search of a probationer violates the Fourth Amendment.

The next Supreme Court case involved a parolee. In *Samson v. California*, 547 U.S. 843, 846 (2006), the Court addressed whether a search conducted under a California statute authorizing suspicionless searches of all parolees violated

the Fourth Amendment. Drawing on *Knights* in particular, the Court held that the suspicionless search of the parolee's home did not violate the Fourth Amendment. *Id.* at 850-56. In discussing the privacy interest of the parolee, the Court held:

> As we noted in *Knights*, parolees are on the "continuum" of state-imposed punishments. On this continuum, *parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment*. As this Court has pointed out, "parole is an established variation on imprisonment of convicted criminals . . . . The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence."

*Id.* at 850 (emphasis added) (citation omitted) (ellipsis in original). After an extended discussion, the Court concluded that "parolees like petitioner have severely diminished expectations of privacy by virtue of their status alone . . . [such that] petitioner did not have an expectation of privacy that society would recognize as legitimate." *Id.* at 852.

The Supreme Court has not addressed the question left open in *Knights* and raised here: whether a suspicionless search condition imposed on a *probationer* violates the Fourth Amendment. The Court's statement in *Samson*—that "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment"—makes clear that, although a suspicionless search of a *parolee* is constitutional, a suspicionless search of a *probationer* may not be constitutional.

Our own jurisprudence has overlooked the important distinction between parolees and probationers. Shortly before the Supreme Court decided *Samson*, we decided *Motley v. Parks*, 432 F.3d 1072 (9th Cir. 2005) (en banc). We explained—

correctly at that time—that "[w]e have consistently recognized that there is no constitutional difference between probation and parole for purposes of the fourth amendment." *Id.* at 1083 n.9 (internal quotation marks omitted). As *Samson* makes clear, though, that statement is now incorrect.

Unfortunately, we have applied our rule from *Motley* in cases decided after *Samson*. For instance, in *United States v. Lopez*, 474 F.3d 1208, 1213 n.5 (9th Cir. 2007), we quoted, in a footnote, the now-incorrect statement from *Motley*. In a different footnote, we also stated, incorrectly, that "*Knights* left open the issue decided in *Samson*: 'We do not decide whether the *probation* condition so diminished, or completely eliminated, Knights's reasonable expectation of privacy . . . .' " *Id.* at 1214 n.6 (emphasis added). *Samson* decided whether a suspicionless search of a *parolee* was permissible but did not decide whether a suspicionless search of a *probationer* was permissible.

More importantly, in *Sanchez v. Canales*, 574 F.3d 1169, 1174 & n.3 (9th Cir. 2009), we *applied* the now-erroneous statement from *Motley*:

> There is no question . . . that parole and probation conditions are also categorically sufficient to justify the invasion of privacy entailed by a home search. *See Samson*, 547 U.S. at 847 (where a parolee has agreed to submit to warrantless searches as "a condition of release," subsequent warrantless, "suspicionless search[es] by a law enforcement officer [do] not offend the Fourth Amendment"); *see also Motley*, 432 F.3d 1072 (same).[3]
>
> Given that police officers may search the home of a parolee or probationer "without a warrant" and without "run[ning] afoul of the Fourth Amendment" so long as "the officers have [probable cause to believe] that they are at the address where . . . the

parolee . . . resides," *Motley*, 432 F.3d at 1079, there is no need to be concerned that a neutral magistrate had not approved the reasonableness of the compliance search.

————————

3. Although both *Samson* and *Motley* were parole rather than probation cases, we have "consistently recognized that there is no constitutional difference between probation and parole for purposes of the fourth amendment." *Motley*, 432 F.3d at 1083 n.9.

(Some internal quotation marks and one citation omitted) (citation truncated) (alterations in original.) In my view, *Sanchez*' holdings are incorrect. Before *Sanchez*, neither the Supreme Court nor we held that police officers may search the home of a probationer without any suspicion.

I express no view on whether a suspicionless search of a probationer violates the Fourth Amendment. But this court's continued reliance on the proposition that there is no difference between parolees and probationers in this context directly contravenes the Supreme Court's clear statements in *Samson* and, critically, forecloses our ability to resolve that significant question on its merits. We should convene en banc so that we can correct our mistaken continued application of the *Motley* rule.