BERZON, Circuit Judge,
dissenting:
I continue to agree with Judge Graber that San Francisco Police Department officers lacked reasonable suspicion to search Marcel King at his residence. See Op. at 988-89; United States v. King, 672 F.3d 1133, 1139 (9th Cir.2012) (per curiam), vacated, 687 F.3d 1189 (9th Cir.2012) (en banc) (per curiam). I part ways with the present majority regarding whether police could search King’s home without any individualized suspicion. The majority does not give appropriate weight to two factors that are for me decisive — the particular language in King’s search condition and the Supreme Court’s holdings that probationers have greater expectations of privacy than parolees. I therefore respectfully dissent.
I
Like the majority, I “examine the totality of the circumstances to determine whether the suspicionless search of [King’s] residence was reasonable.” Op. at 989-90. I begin by analyzing King’s privacy interests under the Fourth Amendment, and then turn to the weighing of those interests against competing, governmental concerns. See Samson v. California, 547 U.S. 843, 848, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006); United States v. Knights, 534 U.S. 112, 118-19, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001).
A
In assessing “ ‘the degree to which [the search] intrude[d] upon [King’s] privacy,’ ” Samson, 547 U.S. at 848, 126 S.Ct. 2193 (quoting Knights, 534 U.S. at 119, 122 S.Ct. 587), a critical fact that distinguishes this case from Knights and Samson is the text of the probation search condition applicable to King. The condition in Knights authorized searches “with or without a search warrant, warrant of arrest or rea *992 sonable cause.” Knights, 534 U.S. at 114, 122 S.Ct. 587. The parole condition in Samson, in turn, provided for searches “ ‘without a search warrant and with or without cause.’ ” Samson, 547 U.S. at 846, 126 S.Ct. 2193 (quoting Cal.Penal Code § 3067). In contrast, King’s probation search condition was as follows:
Defendant is subject to a warrantless search condition, as to defendant’s person, property, premises and vehicle, any time of the day or night, with or without probable cause, by any peace, parole or probation officer.
Under the terms of his search condition, then, King was subject to searches without a warrant and “without probable cause.” But King’s search condition did not “clear[ly] and unambiguously]” permit searches without any modicum of individualized suspicion. See Samson, 547 U.S. at 852, 126 S.Ct. 2193. To the contrary, by specifying that the search could be “without probable cause,” the search condition, read in the context of well-developed Fourth Amendment concepts, indicated that some cause was required, just not the relatively high standard of suspicion portended by the term “probable cause.”
I note at the outset that the language of King’s search condition differs from that of every parole or probation agreement that we or the Supreme Court have analyzed in determining the reasonableness of a war-rantless search. I have found no Ninth Circuit or Supreme Court case — and neither the majority nor the government cites any — in which a parole or probation agreement provided for searches “without probable cause” but lacked a provision expressly authorizing searches without reasonable suspicion. The relevant precedents governing the validity of warrantless searches of probationers or parolees either involved (1) probation conditions that stated some standard of suspicion other than that used in King’s agreement;[1] or (2) the condition mandated by California Penal Code § 3067 for all parolees.[2]
As is apparent from the varied wordings of the search conditions in the aforementioned probation cases, California judges do not uniformly impose the same search conditions on all probationers, nor do they necessarily impose on probationers the *993 terms of the mandatory parole condition. See supra nn.1-2. Unlike the majority, I assume that King’s sentencing judge chose the particular words in King’s search condition as the judge “determined ... fitting and proper,” see Cal.Penal Code § 1203.1(j)) and I would give effect to the particular language used.
The difference between the probable cause standard[3] and the lesser reasonable suspicion standard[4] is fundamental to Fourth Amendment law.[5] Although neither standard is “finely-tuned,” see Ornelas v. United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (internal quotation marks omitted), the reasonable suspicion standard requires “at least a minimal level of objective justification,” Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). So the sentencing judge’s decision to limit the probation search condition to searches conducted without probable cause, while not stating that searches could be conducted in the absence of reasonable suspicion, has import in the Fourth Amendment lexicon.
Moreover, as I have noted, California’s mandatory parole condition includes the term “with or without cause,” see supra p. 992 & n.2; that provision covers the entire universe of searches, including those conducted without any cause. King’s search condition was conspicuously narrower, authorizing searches only “with or without probable cause.” Had the judge who placed King on probation meant to permit a search without any suspicion or cause, he could have used the mandatory parole *994 condition language. But he did not, indicating an intent to deviate from the “no cause” condition signified by that locution.
The majority cites two California Supreme Court cases for the proposition that as a matter of California law, King’s particular search condition was an agreement “to be subject to suspicionless searches.” Op. 988 n.3 (citing People v. Woods, 21 Cal.4th 668, 674-75, 88 Cal.Rptr.2d 88, 981 P.2d 1019 (1999); People v. Bravo, 43 Cal.3d 600, 609-10, 238 Cal.Rptr. 282, 738 P.2d 336 (1987)). After Knights and Samson — both decided after Woods and Bravo—these California cases cannot control here with regard to the impact of the condition’s wording on King’s reasonable expectation of privacy.
Federal law, not California law, governs the ultimate question before us, which is whether the San Francisco police’s search of King’s residence was permissible under the Fourth Amendment. See, e.g., United States v. Davis, 932 F.2d 752, 758 (9th Cir.1991) (noting that “the validity of a search conducted by state law enforcement officers is ultimately a question of federal law”).
Knights and Samson make clear that the California Supreme Court’s analysis in Woods and Bravo is inapposite, and so not binding, here. Woods and Bravo upheld warrantless, suspicionless searches of probationers based on two interrelated factors: that 1) the probationers had “validly consented] in advance to warrantless searches in exchange for the opportunity to avoid service of a state prison term,” Woods, 21 Cal.4th at 674, 88 Cal.Rptr.2d 88, 981 P.2d 1019 (citing Bravo, 43 Cal.3d at 608, 238 Cal.Rptr. 282, 738 P.2d 336, and Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)); and 2) that courts should not interpret “minor differences in the wording of search conditions in other probation orders” as having any significance in the scope of a probationer’s consent to searches, Bravo, 43 Cal.3d at 606-07, 238 Cal.Rptr. 282, 738 P.2d 336.
Knights and Samson abjure reliance on either of the California Supreme Court’s rationales. Each of the U.S. Supreme Court precedents expressly declined to adopt the central holding of Bravo, reiterated in Woods, that ‘“acceptance of the search condition constituted consent in the Schneckloth sense of a complete waiver of ... Fourth Amendment rights.’ ” Samson, 547 U.S. at 852 n. 3, 126 S.Ct. 2193 (quoting Knights, 534 U.S. at 118, 122 S.Ct. 587) (internal citation omitted). Instead, Knights and Samson each followed a Fourth Amendment balancing approach, under which the search condition is pertinent not as evidencing consent but as partially indicative of the probationer or parolee’s reasonable expectation of privacy. And, in implementing that approach, neither followed Bravo’s rough, generic interpretation of the search conditions, even though Samson and Knights were both cases involving search conditions in California. Instead of relying on Bravo’s generic interpretation of all warrantless search conditions — as the majority here does — the U.S. Supreme Court proceeded to analyze the “plain terms” of the search conditions. See id. at 852, 126 S.Ct. 2193.
In doing so, Samson repeatedly emphasized the significance of the fact that the search conditions in both Knights and Samson were “clear and unambiguous,” explaining that in Knights, in determining the reasonableness of the search conducted pursuant to Knights’s probation condition, “[w]e ... considered the facts that Knights’ probation order clearly set out the probation search condition, and that Knights was clearly informed of the condition. ... [W]e found that acceptance of a clear and unambiguous search condition *995 ‘significantly diminished Knights’ reasonable expectation of privacy.’ ” Samson, 547 U.S. at 849, 852, 126 S.Ct. 2193 (quoting Knights, 534 U.S. at 120, 122 S.Ct. 587) (emphasis added). With regard to the search condition at issue in Samson, the Court noted that the condition “was ‘clearly expressed’ to [Samson].” Id. at 852, 126 S.Ct. 2193 (quoting Knights, 534 U.S. at 119, 122 S.Ct. 587) (emphasis added). Samson further explained that the “plain terms of the ... search condition” were a central factor in evaluating the searched party’s reasonable expectation of privacy. Id. (emphasis added).
Over and over, then, Samson and Knights stressed the importance of the “plain,” “clear[ ],” and “unambiguous,” terms of the search conditions in those cases. We are of course bound by the “mode of analysis” of the United States Supreme Court in deciding Fourth Amendment questions, see United States v. Van Alstyne, 584 F.3d 803, 813 (9th Cir.2009), not that of the California Supreme Court.[6] Applying the principles set forth in Knights and Samson, I would conclude, for the reasons explained above, see supra pp. 991-93, that King’s search condition did not plainly, clearly, and unambiguously provide notice that he was subject to searches without even reasonable suspicion. Because King was not as a condition of probation subject to searches conducted without that quantum of suspicion; the search condition did not diminish King’s privacy interests in any sense relevant to the suspicionless search at issue in this case.
B
The next relevant consideration in assessing King’s privacy interests is King’s status as a probationer. See Samson, 547 U.S. at 850, 126 S.Ct. 2193; Knights, 534 U.S. at 119, 122 S.Ct. 587.
While the Supreme Court has held that parolees may be subject to suspicionless searches, Samson, 547 U.S. at 857, 126 S.Ct. 2193, the Court has never held that a suspicionless search of a probationer would pass Fourth Amendment muster, see Knights, 534 U.S. at 120 n. 6, 122 S.Ct. 587. The Court has instead emphasized that probationers have greater Fourth Amendment interests than parolees. See Samson, 547 U.S. at 850, 126 S.Ct. 2193. Samson, in turn, cited approvingly to Judge Kleinfeld’s concurring opinion in United States v. Crawford, 372 F.3d 1048 (9th Cir.2004) (en banc), in which Judge Kleinfeld wrote separately “to clarify the distinction between parolees and probationers,” “who are near opposite ends of the punishment scale.” Id. at 1076-77 (Kleinfeld, J., concurring); see Samson, 547 U.S. at 855, 126 S.Ct. 2193. And our *996 court recently deemed the distinction between parolees and probationers so important that we went en banc to overrule our case law that conflicted with Samson insofar as it held that “ ‘there is' no constitutional difference between probation and parole for purposes of the fourth amendment,’ ” King, 687 F.3d at 1189 (quoting Motley, 432 F.3d at 1083 n. 9), and had “overlooked the important distinction between parolees and probationers,” see United States v. Baker, 658 F.3d 1050, 1059 (9th Cir.2011) (Graber, J., concurring).
The constitutionally significant difference between probationers’ and parolees’ reasonable expectations of privacy stems from the fundamental difference between the circumstances under which persons are sentenced to the two forms of state supervision. Often, “[p]arolees are persons who have been sentenced to prison for felonies and released before the end of their prison terms.” Crawford, 372 F.3d at 1077 (Kleinfeld, J., concurring). But see Cal.Penal Code § 3000 (requiring parole for persons released from prison upon completion of their prison terms). In California, every person released from state prison is placed on parole “irrespective of whether the inmate is capable of integrating himself back into productive society.” Samson, 547 U.S. at 854, 126 S.Ct. 2193 (citing Cal.Penal Code §§ 2931, 2933, 3000 (West 2000)). Probationers, in contrast, may have been convicted of an infraction, misdemeanor, or felony. Crawford 372 F.3d at 1077 (Kleinfeld, J., concurring); see CaLPenal Code § 1203. And in California, even if a person is convicted of a felony, as King was, he can only be sentenced to probation if the sentencing judge has determined, based on the facts and circumstances of the offense and the history and characteristics of the defendant, “that there are circumstances in mitigation of the punishment prescribed by law or that the ends of justice would be served by granting probation to the person.” Cal.Penal Code § 1203(b)(3). As Judge Kleinfeld aptly put the point: “Unlike parolees, who were sent to prison for substantial terms, probationers attain that status from a judicial determination that their conduct and records do not suggest so much harmfulness or danger that substantial imprisonment is justified.” Crawford 372 F.3d at 1077 (Kleinfeld, J., concurring).
In light of the Supreme Court’s and our case law distinguishing between probationers’ and parolees’ reasonable expectations of privacy, I cannot accept the majority’s conclusion that King’s privacy interest was so “small” as to permit entirely suspicion-less searches. See Op. at 990. I recognize that King’s status as a probationer diminished his expectation of privacy. See Knights, 534 U.S. at 120, 122 S.Ct. 587. But I cannot go along with discounting his privacy interests to the minimal level the majority posits, especially in his residence, where Fourth Amendment rights are particularly “sacrosanct.” See United States v. Duenas, 691 F.3d 1070, 1080 (9th Cir.2012) (citing United States v. Jones, — U.S. -, 132 S.Ct. 945, 951, 181 L.Ed.2d 911 (2012)).
* * *
The majority holds that the San Francisco police’s suspicionless search of King’s residence, pursuant to a probation agreement that did not clearly permit searches with less than reasonable suspicion, “intruded on [King’s] legitimate expectation of privacy only slightly.” Op. at 990. I would give greater weight than the majority to the Supreme Court’s admonition that the “permissible degree” of “impingement upon [probationers’] privacy” “is not unlimited.” See Griffin v. Wisconsin, 483 U.S. 868, 875, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). Under the circumstances of this case — including the limited search condition' — -King had a moderate privacy *997 interest, albeit one somewhat diminished by his status as a probationer.
II
I agree with the majority that under the Supreme Court’s analysis in Samson and Knights, the government has legitimate interests in supervising probationers, see Samson, 547 U.S. at 853, 126 S.Ct. 2193; Knights, 534 U.S. at 120, 122 S.Ct. 587, interests which the Court has accorded significant weight in authorizing warrant-less searches of probationers and parolees. I nonetheless have two disagreements with the majority’s analysis of the government’s interests here.[7]
First, the government’s interest in “ ‘apprehending violators of the criminal law, thereby protecting potential victims’ from probationers’ recidivism,” Op. at 990 (quoting Knights, 534 U.S. at 121, 122 S.Ct. 587), is not as compelling with regard to probationers as with regard to parolees. Knights cited a 43% recidivism rate for felons on probation as a factor in authorizing warrantless searches of probationers based on reasonable suspicion of criminal activity. 534 U.S. at 120, 122 S.Ct. 587 (citation omitted). Samson cited a 68-70% recidivism rate for parolees as a factor in permitting warrantless searches of parolees without even reasonable suspicion. 547 U.S. at 853-54, 126 S.Ct. 2193 (citation omitted). Although both recidivism rates are considerable, the rate for probationers is substantially lower. As one of several factors to assess under the totality of the circumstances approach, I would conclude that the state’s interest in crime prevention is somewhat weaker here than in Samson.
Second, the mere fact that the Supreme Court has described the government’s interests in preventing crime among probationers and parolees as “substantial,” and has articulated several justifications for why this is so, see id. at 853-55, 126 S.Ct. 2193; Knights, 534 U.S. at 120-21, 122 S.Ct. 587, cannot alone allow suspicionless searches. The government always has a “general interest in crime control.” City of Indianapolis v. Edmond, 531 U.S. 32, 42, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). Fourth Amendment protections exist precisely to prevent “intrusions” on the fundamental right of privacy “from becoming a routine part of American life,” in the face of the substantial interest in preventing crime and apprehending criminals. See id. So the three-fold government interests the majority articulates — reducing recidivism, discovering criminal activity, and promoting probationers’ reintegration, Op. at 990-91 cannot by themselves bear the weight the majority places on them. The “totality of circumstances” analysis is not an arithmetic problem. Cf. Noble v. United States, 231 F.3d 352, 359 (7th Cir.2000); Piamba Cortes v. Am. Airlines, Inc., 177 F.3d 1272, 1298-99 (11th Cir.1999).
Ill
Considering both the particular terms of King’s search condition, and his probationer (and not parolee) status, I would hold that King had a somewhat greater expectation of privacy than the parolee in Samson. And King’s probationer status also makes the government’s interests at least slightly weaker here than in Samson. Weighing the “balance of these considerations,” see Knights, 534 U.S. at 121, 122 S.Ct. 587, I would hold that King was *998 subject to warrantless searches only upon reasonable suspicion of criminal conduct.
CONCLUSION
Warrantless searches conducted with only reasonable suspicion of criminal activity represent a considerable departure from the generally applicable requirement for a search of a person’s residence. The Supreme Court has upheld such searches for probationers, see Knights, 534 U.S. 112, 122 S.Ct. 587, but the majority’s decision goes one step further, permitting such searches without any quantum of suspicion, as long as the probationer has assented to a warrantless search condition, no matter how ambiguously worded. I would not expand the “ ‘closely guarded ... category of constitutionally permissible suspicionless searches’ ” further than the Supreme Court already has. See Samson, 547 U.S. at 860, 126 S.Ct. 2193 (Stevens, J., dissenting) (quoting Chandler v. Miller, 520 U.S. 305, 309, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997)).
I therefore dissent from the majority’s decision upholding the district court’s order denying King’s motion to suppress. I would instead remand to the district court for further proceedings, including resolution of the factual dispute whether the police obtained valid consent for the search from King’s mother. See United States v. Prieto-Villa, 910 F.2d 601, 602 (9th Cir.1990).

. See Knights, 534 U.S. at 114, 122 S.Ct. 587; United States v. Baker, 658 F.3d 1050, 1054 (9th Cir.2011) (“with or without a warrant, with or without probable cause, and with or without reasonable suspicion”), overruled in part, United States v. King, 687 F.3d 1189 (9th Cir.2012) (en banc) (per curiam); Sanchez v. Canales, 574 F.3d 1169, 1171 (9th Cir.2009) ("with or without a search warrant, warrant of arrest or reasonable cause”), overruled in part, King, 687 F.3d at 1189; Moreno v. Baca, 431 F.3d 633, 637 (9th Cir.2005) (“without a warrant”), overruled in part, King, 687 F.3d at 1189.
I note that Sanchez misstated California law when it reported that "every probationer in California is required to 'submit his ... person, property, place of residence, vehicle, [and] personal effects, to search at any time, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer of officer of the law.’ " 574 F.3d at 1171 (emphasis added). Sanchez did not specify the source for its quoted statement. As I understand California law, and as the parties in this case have briefed it, all California parolees are subject to a search condition "with or without a search warrant or with or without cause,” Cal.Penal Code § 3067(b)(3), but probationers are not automatically subject to any search condition, though a court "may impose ... reasonable conditions[ ] as it may determine are fitting and proper,” id. § 1203.1®.

. See Samson, 547 U.S. at 846, 126 S.Ct. 2193 (quoting Cal.Penal Code § 3067) (" 'without a search warrant and with or without cause' ”); United States v. Lopez, 474 F.3d 1208, 1209 (9th Cir.2007) (same), overruled in part, King, 687 F.3d at 1189; Motley v. Parks, 432 F.3d 1072, 1075 n. 2 (9th Cir.2005) (en banc) (same), overruled in part, King, 687 F.3d at 1189.

. "Probable cause exists where the facts and circumstances within [an officer’s] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.” Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 370, 129 S.Ct. 2633, 174 L.Ed.2d 354 (2009) (alterations in original) (internal quotation marks omitted).

. "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.” Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).
The Supreme Court recently described the quantum of suspicion that an officer must have before conducting a warrantless search under each standard: For searches that require probable cause, the officer must know that the search "raise[s] a 'fair probability’ or a ‘substantial chance’ of discovering evidence of criminal activity.” Safford, 557 U.S. at 371, 129 S.Ct. 2633 (internal citations omitted). For searches that require reasonable suspicion, there need only be “a moderate chance of finding evidence of wrongdoing.” Id.
California cases sometimes use the terms “reasonable suspicion” and "reasonable cause” interchangeably. See, e.g., People v. Letner, 50 Cal.4th 99, 146-47, 112 Cal.Rptr.3d 746, 235 P.3d 62 (2010); People v. Souza, 9 Cal.4th 224, 232, 36 Cal.Rptr.2d 569, 885 P.2d 982 (1994) (citing In re Tony C, 21 Cal.3d 888, 148 Cal.Rptr. 366, 582 P.2d 957 (1978)). The Supreme Court has occasionally done so as well. See Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (describing the requisite level of suspicion required for a stop-and-frisk under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), as "reasonable cause”).

. See, e.g., Safford, 557 U.S. at 377, 129 S.Ct. 2633 (requiring reasonable suspicion, but not probable cause, that a student has concealed contraband in her underwear before school officials may conduct a strip search); Maryland v. Buie, 494 U.S. 325, 334-35, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (permitting searches incident to arrests upon reasonable suspicion that danger to arresting officers exists); Terry, 392 U.S. 1, 88 S.Ct. 1868 (authorizing protective stop-and-frisks without probable cause but with reasonable suspicion); United States v. Becerra-Garcia, 397 F.3d 1167, 1174 (9th Cir.2005) (noting that under the Fourth Amendment, "investigative traffic stops” require "only reasonable suspicion”).

. The California Supreme Court decided Woods and Bravo under federal constitutional standards, not under some separate state law ground under which we might be bound or that might feed into our interpretation of King’s search condition under the totality of the circumstances analysis. Compare Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir.2011) (noting that “[w]hen interpreting state law, federal courts are bound by decisions of the state’s highest court”) (internal quotation marks omitted). Under the California Constitution, California courts may only grant a suppression motion when “exclusion is mandated by the federal Constitution.” People v. Robinson, 47 Cal.4th 1104, 1119, 104 Cal.Rptr.3d 727, 224 P.3d 55 (2010) (citing Cal. Const. art. 1 § 28(f)(2)). Woods and Bravo, in turn, upheld searches of probationers under the Fourth Amendment, not under some separate state law standard. See Woods, 21 Cal.4th at 674, 88 Cal.Rptr.2d 88, 981 P.2d 1019 (citing Cal. Const. art. 1 § 28); see also Bravo, 43 Cal.3d at 603 n. 3, 238 Cal.Rptr. 282, 738 P.2d 336 (noting that the search in Bravo occurred before the relevant California constitutional provision was enacted, but that the court's analysis would be identical whether under the California Constitution or the federal constitution).

. For the reasons explained in Part I.A, supra, I disagree with the majority’s assertion that the government's general “interest in discovering criminal activity and preventing the destruction of evidence” is heightened by King’s ”accept[ance]” of this particular search condition. See Op. at 990-91.